(Decided 23d July, 1867.)

JOHN YOUNG, THOMAS M. DANIELS, CHRISTOPHER KELLY AND THE COMMISSIONERS OF ALLEGANY COUNTY *vs.* WILLIAM TWIGG AND OTHERS.

*Construction of a Will—Rule of Construction—Orphans' Court—Cross Bills—Substitution.*

A testator devised to his oldest son, William, the following tracts or parts of tracts of land, to wit: it being one-half of the tract I bought of the Commissioners of Allegany, and known as the old farm of James Preter, together with all of the improvements thereon, and also part of a tract of land called " Cleverly " and containing in all five hundred and forty-eight acres of land, it being the one-half of the above mentioned tract, together with all the improvements thereon, the above named tracts or parts of tracts of land lying and being in Allegany county, State of Maryland. HELD :

1st. That under this clause, there was devised to William the interest in the undivided moiety which in connection with Kelly, the testator bought of the Commissioners of Allegany county; and he was entitled upon payment of the whole purchase money, to call upon the vendors, for a conveyance of the legal title.

2d. That the authority conferred upon the executor by a subsequent clause in the will to "rent or sell" the testator's lands, or the general provision for the payment of debts in another clause, gave the executor no power to sell the land devised to the testator's son, William, and the Orphans' Court had no jurisdiction to direct or ratify said sale.

In construing a will, the intention of the testator is to be sought from the face of the will, and in doing so, all its parts in their mutual relations to, and bearing upon each other must be considered. And if possible, effect must be given to every clause, assuming that the testator had a specific purpose in each separate disposition, which, if it can be carried out, constitutes a material element of his will.

Cross bills in the equity practice of this State, are not usual or encouraged, when the same purposes can be attained, and equal justice awarded between the parties to the original suit, whether as between complainant and defendant, or as between co-defendants. The tendency of the modern authorities is to dispense with them as far as practicable, so as to curtail litigation and expense. Where possible, the answer is viewed in the light of a cross-bill, and made the foundation for a decree.

Where a testator specifically devised a part of his real estate to his son, and died leaving personal and real estate, exclusive of the part so devised, insufficient to pay his debts, and the real estate so devised was sold by the executor and the proceeds thereof applied to the payment of debts, the purchaser of said real estate, has the right to be substituted in equity to the rights of creditors, to the extent of the application to them, of the purchase money paid by him, regard being had to the portion of debts which would properly fall upon the land purchased by him, upon a proper ascertainment of the same, by the auditor.

APPEAL from the Equity side of the Circuit Court for Allegany County.

The bill in this case was filed on the 7th of October, 1861, by William Twigg, against the Commissioners of Allegany county, John Young, Thomas M. Daniels and Christopher Kelly, and prayed for a decree to compel the Commissioners of Allegany county, to convey to the complainant an undivided half in certain lands purchased

from them by Christopher Kelly and James Twigg, the father of the complainant, or to convey to him in severalty that part of the property purchased as aforesaid, and held by the said James Twigg in his lifetime, under a parol partition between him and the said Kelly; together with an undivided half of so much of said lands as were purchased by them, and not divided between them. The bill also prayed for an account against Daniels and Young for the rents and profits of the said property, while they respectively occupied the same; and for such other and further relief as the nature of the case might require. All of the defendants appeared and answered. Pending the case, the defendant Young filed a cross-bill. The facts of the case will be found very fully and clearly stated in the following opinion of REVERDY JOHNSON, JR., who acted as Special Judge in the trial of the cause below:

The bill seeks to procure from the Commissioners of Allegany county, the legal title to a portion of land alleged to have been purchased from them by James Twigg, the father of complainant, and a certain Christopher Kelly, on the 5th of April, 1853. The purchase was in undivided moieties and the full consideration had been paid at the filing of the bill. The land sold by the Commissioners, as appears by the agreement, is described as the reversionary interest in certain land, in which Mrs. Harriet Pigman then had a dower interest, together with the lease of her life estate, and also all the balance of the lands which belonged to B. S. Pigman and which had not been disposed of by Hanson B. Pigman or Nathaniel Pigman, trustees, or by Thomas J. McKaig, trustee, for the sale of the real estate of B. S. Pigman, prior to the 6th of April, 1859, being the same lands which were purchased by the Commissioners from the said McKaig as trustee of Pigman, reference being had for more particular description, to the articles of agreement between them and McKaig, of 6th April, 1850. In this latter instru-

ment the lands are designated as "the *balance of the Prather Farm not heretofore sold.*" The complainant rests his claim upon a special devise in the will of his father James Twigg, deceased. The County Commissioners aver their readiness to comply, but for a counter-claim upon them for the same land by the defendant Young. The latter claims by virtue of a sale made by John Hartley as executor of James Twigg, under either an express power to sell conferred by the will, or by the implied power vested in him as executor, to subject the real estate of the deceased to the payment of debts. The controversy turns upon the construction of certain clauses in the will of James Twigg. The questions are, what interest, if any, the complainant took under the will, and whether the executor had any power of sale, as to this particular land? The positions of the claimants are so directly the reverse of each other, that the inquiry into the right of one, virtually disposes of that of the other.

First. As to the complainant's interest under his father's will. The will bears date 9th August, 1854, and in its third clause provides as follows :

"Item. I give and bequeath to my oldest son William, the following tracts or parts of tracts of land, to wit: it being one-half of the tract I bought of the Commissioners of Allegany, and known as the old farm of James Preter, together with all of the improvements thereon, and also part of a tract of land called "Cleverly," and containing in all five hundred and forty-eight acres of land, it being the one-half of the above mentioned tract, "together with all the improvements thereon, the above named tracts or parts of tracts of land lying and being in Allegany county, State of Maryland."

This devise the defendant Young contends is unavailing to the complainant, because on its face it is void for uncertainty, as to what land and what part or half of land it refers to; and because he cannot introduce matters

*aliunde* to give greater certainty to the clause. In construing a will we are to seek the intentions of the testator from the face of the will, and in doing so, have to take all its parts in their mutual relations to and bearing upon each other. And we are also to give effect, if possible, to every clause, assuming that the testator had a specific purpose in each separate disposition, all of which, if they can be carried out, constitute material elements of his will. The testator in this case left a widow and ten children; and the purpose of the will, as gathered from its face, is to give to the widow a one third interest for life, in such of his real estate as she may select, and the remainder of the realty outside of the third clause, as well as the reversion after her life estate, is devised to his ten children. The complainant William was numbered among the ten. After specific pecuniary legacies to three of the children in the seventh clause he devises the "rest and residue" of his real and personal estate to be equally divided among his ten children named in the second clause. Now thus far William would take an equal interest with his brothers and sisters, in what was embraced in the "rest and residue." But there are other provisions of the will to be gratified, and what constitutes the "rest and residue" in the mind of the testator, must depend upon what disposition he may have made in the prior clauses of the will. It is clear that that part of the realty in which the widow might elect her dower, formed no part of this "rest and residue," because in the second clause he expressly provides for that portion after the termination of the life estate. He directs it to be sold by the executor, and its proceeds to be equally divided among all the ten children. On coming to the third clause we see an apparent design of the testator to except other property from this residuary devise. Whether the particular part of the estate can be sufficiently designated or not, so as to pass it to the

devisee, the intention is apparent to make William a favored beneficiary under the will.   In the second and seventh items, he is given an equal share with the other children in the property, which is clearly embraced in those clauses, and in this third clause a much larger portion of the realty is designed to be given to him.   If this can be gratified, it is just as imperative upon this Court to carry out the devise contemplated by this part of the will, as any of the other dispositions it contains.   About the intent on the part of the testator, I conceive there can be no doubt, the only question is how we are to arrive at the subject matter of that intent.   And I think it is in this, that the defendants' position fails of force.   To look outside of the will to ascertain what the testator at the time of using the words may have proposed as to their effect—and to refer "*aliunde*" to learn upon what subject matter the language as used would operate, are very different inquiries, and so recognized by the authorities. In the first case evidence or explanations "*dehors*" the instrument, is not admitted to speak for the testator; in the latter such means of ascertaining the subject of the devise are clearly admissible.   1 *Greenleaf Ev.*, 277, 288 ; *Smith vs. Bell*, 6 *Peters*, 68 ; *Walston vs. White*, 5 *Md. Rep.*, 297.   If the evidence upon which the complainant relies here to give certainty to this devise, is admissible, there can be no doubt as to the particular portion of his estate the testator intended to embrace in this clause.   The case of *Douglas vs. Blackford*, 7 *Md. Rep.*, 8, was very similar to this in its facts, both as to the character of the devise, the evidence introduced to sustain it, and the objection urged.   The testator in that case devised to his son Henry his " Home Place," and to his son William his " Lower Farm," on which " Knode lived," to wit, the three parcels of land at different times acquired by purchase from the heirs of Thos. Shepherd, Dr. Hays, and the trustee for the sale of Bedinger's real

estate. The question was what passed to William under the description "Lower Farm," there being an apparent discrepancy, between that general term and the further description, "the three parcels of land," &c., in other words, as urged here, an uncertainty as to what the clause devised. But the Court had no difficulty in that case in looking "*aliunde*" and in referring both to record evidence, and to parol testimony to ascertain what the terms "Home Farm" and "Lower Farm," embraced. We turn now to the particular will, and find that in the third clause the testator devises to William one-half of the tract he bought of the Commissioners of Allegany county, "and known as the old farm of James Preter," &c.

With the evidence documentary and parol before the Court, and proper to be regarded, there can be no question as to the particular land referred to in this clause, or the nature of the interest the testator intended to devise. The exhibits and the testimony of White place this beyond all doubt, and the testator, I consider, has validly devised to William, the interest in the undivided moiety which, in connection with Kelly, he bought of the Commissioners of Allegany county. By "one-half of the tract I bought," we are not to consider him as speaking only of one-half of his individual interest, so as to vest in William but one-half of the whole purchase. For in the after part of the clause, when he sets out the estimated contents of the whole parcel bought of the Commissioners, he again refers to the portion devised to William, as *the one-half* of the tract; at the time of the execution of this will, as well as at the period of his death, the testator well knew that he had no legal vested estate in the lands so devised. At his death there still remained a payment due the Commissioners—so that he could not be construed to speak, so much of the land itself, as the interest he then held in it, that is to say, an

equitable interest in an undivided moiety of the whole purchase. Unless other features of the case control this, according to the Court's interpretation of the third clause, William took that interest; which, upon the subsequent payment of the whole purchase money, gave him a right to call upon the vendors for a conveyance of the legal title. It is urged that before the complainant can establish his claim to the land in controversy, he should aver and show, that the widow, with power of election as to dower, had not elected a part or the whole of the subject matter of this devise, for if she had, as the remainder after her life estate in such part was impera- tively ordered to be sold for distribution among all the children, this land could not now be the subject of the devise. It is true the choice of the widow as to this land might, to the extent of her interest, injure the complain- ant. But I do not see how her election or omission to elect can bear upon the question as between the parties now before the Court. If she had in fact made an elec- tion, but had chosen another part of the estate, the objection would fail, or if within the time prescribed by law, she had chosen this portion for her interest under the will, the only effect would be to divest an equitable title in whole or in part, which had passed to the com- plainant at the moment of the testator's death. Taking under the will, she is not in by her common law right. In that case she would be in, not by the formal assign- ment of dower, but instantly upon the husband's death, and as a continuation of his seizin, (4 *Kent*, 69, 1 *Md. Ch. Dec.*, 487.) But claiming under the will, with the necessity of election, (not election technically considered) the interest would have passed by the will to the devisee, liable to be divested by subsequent action on the part of the widow. Is this, then, not entirely a matter between the widow and the devisee, or between the devisee and the other children interested in the sale of the remain-

der? And if so, what need was there for the complainant seeking the legal title as against the Commissioners or Young, to refer to the subject of the widow's selection, there being no such proceeding before the Court? and the equitable estate having passed to the complainant at the father's death, is it not now consonant with equity to assume, that the widow had either failed to elect, or that having done so, she had selected another portion of the realty? Thus much for the complainant's title. The claim of the defendant Young raises the other main question in the cause.

His pretentions rest entirely upon a construction which, over-riding the devise to William, subjects the whole estate to the discretion of the executor, for sale and division among all the children, or in liquidation of debts. In support of this construction this defendant argues, that the general intent, as indicated in subsequent clauses of a will, is to control what goes before, and that the power of sale for the purposes indicated, is the general and controlling purpose of this will. This general rule is invoked when a special and general intent are so in conflict as to be unreconcilable, but never when all parts of the will, by a reasonable construction, can be made to take effect. As to the power of sale for division, I see nothing in a reasonable interpretation of this will, which necessarily conflicts with the validity of the devise in the third clause; taken in connection with the residuary clause and the whole context, I think the eighth item by which the power is conferred upon the executor refers only to the "rest and residue." If it were otherwise, why would the testator, in the second clause, have specially provided for sale and division of that part of the estate in which the widow's dower should take effect? If this eighth clause extended to all the property embraced in the will, its general language would as well have included the remaining interest after the widow's life, as

any part embraced by the " rest and residue," yet he makes a special provision as to it, and so I think gives a limitation to this apparently general power. Again, the power is to " rent or sell;" now assuming that the father intended to give William an indefeasible title to what is embraced in the third clause, but that it fails because of uncertainty in the devise, can we conceive that the testator, who must have presumed his words in that clause sufficient to effect his purpose, ever intended that the executor under the power conferred by the eighth clause, was to have a discretionary right to rent out and take full control of what he had expressly devised absolutely to William? The inquiry here is what the father *intended the power* should embrace, and can we attribute to him so unreasonable and inconsistent a purpose as this? That the sale of a realty and its reduction to money with a view to equal distribution was intended, if necessary, is evident; and with regard to the " rest and residue" which is to be equally divided among all the ten children, the discretionary power of sale is given to the executor, as any prudent testator, with such object in view would provide. The direction as to the sale of the reversionary interest, in the second clause, is imperative : he "shall sell" and divide the proceeds among the children. The power in the eighth clause is, as is implied by the *term forever*, authority to sell for the purpose of effecting an equal division, " share and share alike," of that part of the estate among all the children. If all were to be sold for division, which would ignore the specific devise contained in the third clause, would not the other nine children come in for ratable shares of the moiety of the "Preter Farm," and thus the intention of the testator be defeated? It is true, as a practical result, were the devise in the third clause void for uncertainty, that portion of the estate would lapse into the "rest and residue," and so be subjected to the power. But we are enquiring now

what the power was designed to apply to, and as the testator cannot be assumed to have intended the specific devise should fail of effect, what might be an ultimate result is not to guide us in ascertaining the object of the power. But if the express power of sale does not embrace the land devised by the third clause, the alternative proposition on the part of the defendant is, that it is nevertheless subjected to sale by the general provision for payment of debts in the opening clauses of the will. As a general proposition, whether we look to the current of English decisions, or to our local State authorities, and the statute of 1785, ch. 72, and its supplements, upon which they rest, there can be no doubt that the effect of the words, "after payment of debts and legacies," constitute the debts a charge upon the real estate. But conceding this, the question, and a controlling one in this case is, how is the charge to be made effectual?

The Court of Appeals have said in *Cornish vs. Willson*, 6 *Gill*, 315, *and in Gibson et al. vs. McCormick*, 10 *G. & J.*, 65, that since the Act of 1785, it is quite immaterial, in this State, whether these words be in or out of the will; the existence of debts creates the charge. But has an executor, from the mere fact of showing debts more than sufficient to exhaust the personalty, the right to control the real estate? or had an Orphans Court, until a very recent Act of Assembly, (1865, ch. 162,) in the absence of express provision in a will as to sale of land, any jurisdiction over matters pertaining to the realty? This, of course, assumes that the Court is right in holding that the general power does not embrace this particular part of the realty. Debts are a charge or lien, but the executor is not the party nor the Orphans' Court the tribunal to give relief to the creditor. Proceedings for that purpose. belong, in this State, exclusively to Courts of Equity, (6 *Gill*, 302, 5 *Gill*, 443,) and if there be a sale of realty for this purpose, by an executor not authorized by will, or

under order of an Orphans' Court having no jurisdiction in the matter, of course no title can vest in the purchaser. Such is the only title this defendant sets up. He in no wise represents creditors. When they see fit to act, they would adopt the usual and only available mode of proceeding against the realty, by a creditors' bill in a Court of Equity ; then the devisee could, as in justice he ought, to have an opportunity to scrutinize claims, avail himself of special defences, and see that the assets are properly marshalled. This course they could take as well after the legal title has passed to the complainant by the decree now sought, as while the property remains in its present position. There being no creditor before the Court in the present attitude of the case, and the only obstacle being, as alleged, a counter-title, set up under a sale unauthorized upon its face, I do not see any difficulty in the way of the complainant's relief. Though the purchaser may have paid the executor the full equivalent for the land, it does not, in the absence of authority in the vendor, strengthen the title of the vendee.

I have avoided reference to that part of the case which looks to a parol division of their respective interests between James Twigg and Kelly : Because in the first place there is some indication in the evidence that it was not considered by both as a proper or final partition, and as the parties can as well between themselves carry out any purpose they may have as to partition, after the simple question of the complainant's right is decided, I do not think it necessary to go into an inquiry, which, apart from the doubtful character of the testimony, would only serve to multiply questions and embarrass the record. The minority of the complainant at the time of sale and ratification, disposes of the plea of estoppel. And the only remaining inquiry is one of practice, raised by the unanswered cross-bill, not for discovery but relief, filed by the defendant Young. In the chancery practice of our

State cross-bills are not usual or encouraged, when the same purposes can be attained and equal justice awarded between the parties to the original suit, whether as between complainant and defendant, or as between co-defendants. The tendency of the modern authorities is to dispense with them as far as practicable, sô as to curtail litigation and expense. Where possible, the answer is viewed in the light of a cross-bill, and made the foundation for a decree. *Alexander's Chy. Prac.*, 111 ; *Story's Eq. Plead.*, 394 ; *Bradford vs. Union Bank, &c.*, 13 *Howard U. S. R.*, 57 ; *Gibson vs. McCormick*, 10 *G. & J.*, 101. The question in the case now before the Court is purely one of title ; as against the Commissioners holding the legal title, and against Young setting up a paramount equitable title, the complainant files his bill. The answer of Young controverts the complainant's claim upon all the grounds contained in the cross-bill, and as distinctly sets up the title by which he lays claim to the land. The question of title as between these claimants is then as fully before the Court, as it possibly could be by any collateral or independent proceedings. And with the evidence, documentary (as exhibits) and parol, produced by both parties to estabiish their respective claims, the Court is satisfied that the complainant's title is the prevailing one, and that no other or further evidence or proceedings which Young could introduce would affect that result. If upon considering this the original bill, the Court could have come to the conclusion, either that under the general power of sale the executor was authorized to dispose of this land, by which title had vested in Young, or that for deficiency of assets the land had to be sold by the executor as the proper party, I presume under our practice the Court could as well have directed a conveyance to Young, by reason of the title set up in the answer, as by a formal cross-bill praying for specific relief ; and if the proof at the hearing were defec-

tive as to insufficiency of assets, which in the second aspect gave the right to sell, the Court, before proceeding to decree, could call for further proof to satisfy itself of that fact. (2 *Daniell Ch'y Pr.*, 998, *marg.*) The case is somewhat similar to that of *Ayres vs. Carver*, 17 *Howard*, 591. Carver had filed his bill against Ayres & Niles, with numerous other defendants, to make valid an equitable claim to certain lands. The particular defendants put in their answers, setting up title superior to that of their co-defendants—and then filed a cross-bill against the original complainant and their co-defendants, based upon the same general ground. The Court held, that the cross-bill was improperly filed; first, because it was not material to the complainant how superior their title might be to that of their co-defendants—that was a question to be settled among them—and here any claim for partition between Young and Kelly, was immaterial to the complainant, so long as his own title might prevail; and secondly, that the same defence, with whatever validity attached to it, had been relied upon in the answer to the original bill, which formed the only issue in which the complainant was interested, and by which his rights could be ascertained. In granting the relief prayed in this bill, by which the legal title is to be conveyed to the complainant, possession is a material element in the assistance to be granted by this Court. And in accordance with the established practice in Chancery proceedings, in cases of this character, where equity having jurisdiction of the controversy goes on to give full relief, without invoking the aid of the common law Courts, I shall direct possession to be delivered up by the defendant Young, of so much of the property as he may occupy or hold. 5 *H. & J.*, 312 ; 4 *Johns. Ch'y Rep.*, 619. I shall therefore enter a decree conforming to the prayer of the bill, by directing the conveyance of the property by the defendants, the Commissioners, to Twigg and Kelly, in the proportions claimed

by each, and a statement of rents and profits by the defendant in possession—together with delivery of possession in conformity with the views of the Court.

A decree was accordingly passed in conformity to the foregoing opinion, and from this decree the defendants appealed.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.'

*J. H. Gordon,* for the appellant Young.

The first clause of the will is, "*and after my debts and funeral charges are paid, I devise and bequeath as follows.*" This of itself charges all his estate, real and personal, with the payment of his debts, and the specific and residuary devisees take subject to the payment of his debts and funeral charges. 2 *Jarman on Wills,* 511 to 534 ; *Guyer vs. Maynard, Exr.,* 6 *Gill & John.,* 420 ; *Dugan vs. Hollins,* 4 *Md. Ch. Dec.,* 142 ; *Spencer vs. Spencer,* 4 *Md. Ch. Dec.,* 456 *and* 463 ; 2 *Story's Eq. Jur.,* 1246, *and note* 1 ; *Graves vs. Graves,* 8 *Sim.,* 43, 54 *to* 56 ; *Lupton vs. Lupton,* 2 *John. Ch. Rep.,* 623 ; *Fenwick vs. Chapman,* 9 *Peters,* 461, 469. The debts being charged upon all his estate, real and personal, the specific devises in the third, fourth, fifth and sixth clauses could only take effect after the debts and funeral charges were paid. But the will vests in the executor by its eighth clause the full power to sell ; and therefore he could convey the title just as effectively as a Court of Equity could have done. We are told, however, that the eighth clause gives no power to the executor to sell the land specifically devised by the third clause to William. Let us see how that is. He first provides for the payment of debts and funeral charges ; everything else is subject to that.

2. He provides for his wife for life, and after her death, his executor is to sell her portion and divide it equally among his ten children.

3. He gives to William the part in controversy.

4. Then he gives three legacies in money.

5. Then all the rest and residue is to be equally divided among his ten children by name. In construing the will we must be governed by the intention of the testator; and his general intent must control his special intent, unless both can stand together. 1 *Jarman on Wills*, 411, *note* 1; *Chase vs. Lockerman*, 11 *G. & J.*, 185, 206; *Partridge vs. Dorsey*, 3 *H. & J.*, 307; *Douglas vs. Blackford*, 7 *Md. Rep.*, 8. Now what is the general intent to be gathered from this will? and we must consider the law of Maryland as part of the will, and construe it with reference to the law, as the testator manifestly had it in view. Knowing, therefore, that the law subjected all his estate, real and personal, to the payment of his debts, he provides first for that. Then he gives his wife just what the law would give her, one-third of the real estate for life, and one-third of the personal. Now it cannot be contended for a minute, that the special intent to give this land to William, could prevail over the general intent to pay his debts, when the whole estate was not sufficient for that purpose, for such a special intent would defeat the general, and also the law of the State, which would be an absurdity. The proper mode of construing this will is, to regard the testator as devising all his property, real and personal, for the payment of debts, with power in the executor to sell for that purpose if it should be necessary. After the debts and funeral charges are paid, then the specific devises and legacies to be gratified, if enough remain for that purpose, and after they are gratified, the balance or residue to be sold by the executor and distributed equally among the children, *pro rata*. This is the most favorable interpretation that could be given to this will for the complainant. And if the property specifically devised to him had been taken to pay debts under the power given to the executor, his

remedy was against the real estate for contribution. *Chase vs. Lockerman*, 11 *G. & J.*, 203, 204. It might reasonably be contended that the third clause was repugnant to the eighth, which authorizes the executor to rent out all of the lands until he shall sell, and also to sell any of the tracts or parts of tracts of land at any time hereafter; and that therefore the third was void, or inoperative to take away the power to lease or sell. 1 *Jarman on Wills*, 411, note 1; *Chase vs. Lockerman*, 11 *G. & J.*, 206; *Constantine vs. Constantine*, 6 *Ves. Jr.*, 100. The land being charged with payment of debts, and the eighth clause giving the executor power to sell, the presumption is that his sale was within the power thus given to pay debts. 1 *Phil. on Ev., Edwards' Notes*, 604, 605; *Hanson vs. Barnes*, 3 *G. & J.*, 359, 368; *Morrison vs. McMillan*, 4 *Littell's Rep.*, 210; *Schilknecht et al. vs. Eastburn's Heirs*, 2 *G. & J.*, 114 *and* 130. The bill should therefore have stated sufficient assets to pay debts, and its failure to do so is fatal. The power of sale being granted to accomplish the grand purpose of the testator to pay his debts, must be as large as the purpose to be accomplished, and therefore no exception can be made in favor of the special devise or the specific legacies, unless it is alleged and proven that there was other property sufficient to pay the debts. The question here is, not whether the lands are charged with the payment of debts, for that is conceded, but whether the testator intended his executor to sell the land and pay his debts, and thereby avoid the expense and delay of a bill in equity. It is therefore not a question of charge, but of power, which is to be settled by interpretation, and the Act of 1785 has certainly not changed the rules by which wills are to be interpreted, and the intent of testators ascertained, and we must not presume that the Court of Appeals intended any such effect to be given to their language.

The legal title to the land in controversy is in the Commissioners, and the complainant prays a conveyance of this legal title, which it is admitted is charged with the payment of debts against Young, a purchaser from the executor, whose purchase money has been applied to the payment of the debts so charged upon the land. Now in such a case, where all the parties are in Court, equity will not be done by halves. The Court will not decree a conveyance to Twigg without protecting Young, and if the Court should even think that Twigg is entitled to the conveyance, it will be after paying to Young the purchase money. *Gibson vs. McCormack*, 10 *G. & J.*, 107; *Cornish vs. Wilson*, 6 *Gill*, 335, 336. The devisee takes subject to the debts, and Young having paid the debts, part being the purchase money to the Commissioners, has the superior equity, and must be protected. *Adams' Eq.*, *Introduction LXII*; 2 *Stor. Eq.*, 742, 748, 750, 788, 789; 1 *Mad. Cr.*, 405, '6, &c.; 3 *Par. on Con.*, 351, and note *f*; *Taylor vs. Longworth & Corneal*, 14 *Peters*, 172, 174. The money paid by Young for the purchase of these lands, was applied to the payment of the purchase money to the Commissioners, and Young ought to stand in the place of the Commissioners, to the extent of such payment, by subrogation. *Gibson vs. McCormick et al.*, 10 *G. & J.*, 107.

*William J. Read*, for the appellees.

The clause devising the farm to William, shows a *clear* intent to give him that farm in specie. This is a specific devise. *After* this specific devise, and *before* he comes to the clause empowering the executor to sell any of the tracts of land, the testator devises all the rest and residue of his estate, real and personal, to be equally divided among his ten children, share and share alike. There is no *mode* of division indicated in this clause, and real and personal estate are put in the same category. The presumption is,

that he intended his executor to make this division as to realty as well as personalty. This division of land he did not contemplate should be made as *land*, but as the proceeds of the sale of land to be made by his executor. He therefore empowered his executor to sell what he intended should be divided. Now what did he intend should be divided? A satisfactory answer is given by the will itself —for *after* devising the farm to William, and making certain pecuniary bequests, he devises all the rest and residue of his estate, both real and personal, to be divided among his ten children, of whom complainant is one. Now what was this " rest and residue?" Surely not the farm which he had just devised to William. The power of sale was given to the executor for no other purpose than to divide the proceeds among his children; it would have been given for no other purpose. To what then did such power apply? Surely not to the land devised to the complainant alone. The proceeds of that, the testator did not intend to divide among his ten children. Such a construction stultifies the testator, and makes his will absurd.

The presumption is, that every testator, unless the contrary appears on the face of the will, intends that all his devises, bequests and legacies shall be complied with. *Cornish vs. Willson*, 6 *Gill*, 299, 320. The generality of the words in the clause, giving power of sale to the executor, is restricted by the antecedent bequests to the lands not specifically devised. *McChesney vs. Bruce*, 1 *Md. Rep.*, 345.

In the case at bar I contend, that the devise of the power of sale is limited to that of which the immediately preceding clause was treating, viz: the residue. 20 *Pickering*, 252. Even were the two clauses here in conflict, (as they are not,) the prior devise is not to be disturbed, further than is absolutely necessary to give effect to posterior qualifying dispositions. *Pue vs. Pue*, 1 *Md. Ch. Dec.*, 382; *Douglas vs. Blackford*, 7 *Md. Rep.*, 8; *Iglehart vs.*

*Kirwan, Adm'r*, 10 *Md. Rep.*, 559 ; see 1 *Jarman on Wills*, 165, 416, 419, 420, *margin.*

But it is denied that the formal words, "after my debts and funeral charges are paid, constitute the debts and funeral charges of the testator a charge upon the land. Whatever may be the law of England, it has been expressly decided in this State, that these words constitute no charge whatever upon real estate. *Cornish vs. Willson*, 6 *Gill*, 300, 315, 316. The case stands, therefore, as if this clause was not in the will. It is purely formal, and has no effect. It was by this clause alone construed as a charge upon the lands devised to complainant, that there could be any possible pretence that the executor had power to sell the land devised to the complainant. The above cited opinion of the Court of Appeals removes all doubt on that point, and establishes the law of this State, at least, that these words create no charge on real estate.

If the executor had no power to sell, then Young and Daniels got no title, and have no claim to the land or any part of it, and it can make no difference to them, therefore, whether the Court decrees that the Commissioners shall execute a deed to the complainant, conveying to him an undivided half of the bottom land, with an undivided half of all the other lands, or shall decree a conveyance to him of a specific portion of said bottom land in severalty, according to such partition, together with an undivided half of the other lands of which no partition was made. Young and Daniels having no interest in the matter, they will not be heard upon that subject. The only parties interested in this question are the complainant and Kelly, both of whom, the one by his bill, and the other by his answer, say to the Court, that they stand by the partition.

The County Commissioners by their answer, say, that they are willing to execute any deed or deeds the Court may direct, and no harm could come to the Commission-

ers, inasmuch as the decree of the Court based upon the consent, both of Kelly and the complainant, (the only parties in interest,) would be a full protection to them; and as they both admit the parol partition and its execution, and claim the benefit and enforcement thereof in a Court of Equity, the Court will not *ex mero motu*, enforce the Statute of Frauds.   The parties in interest did not rely upon, but expressly waived the Statute of Frauds.

The defendants' solicitor contends, that the devise is void for uncertainty.   The objection is, that you must go outside of the will to show what interest the testator had in the property.   Now the proof is, that when he purchased, it was an undivided half, and he appears to treat the whole as undivided.   In carrying out the intention of the testator, the Court would refer the term, " one-half of the tract," to the interest or quantity of estate held by the testator therein—the evidence showing that the interest of the testator was one undivided half.   The will devises the land purchased by him from the Commissioners of Allegany.   Now the proof shows that he did purchase such land, but, in the purchase, he had a co-purchaser. To give certainty to the devise, it is necessary to show what land he purchased from the Commissioners.   This may be done by offering in evidence the instrument of purchase, whether it be by deed or articles of agreement. *Id certum est, quod certum reddi potest*.   And the agreement with the Commissioners made by Twigg and Kelly, is as much a part of the description as if it had been particularly referred to by date, &c., in the will itself.   When the Court sees that his purchase was of an undivided half, it will construe the will as speaking of his interest or estate in that purchase.

Where a man devises his " Home Farm," what parcels of lands make up the home farm, is matter for parol evidence.   So in this case, what lands constituted the " Old farm of James Preter," bought from the Commissioners,

can be shown by the agreement, and if the agreement use the same general words, then by the parol evidence of witnesses, who know the land, and who swear to the land purchased of the Commissioners. It is neither a case of patent or latent ambiguity. For a full examination of the whole subject, see 1 *Greenleaf's Evidence, secs.* 286, 287 *and* 288, *&c.*

Whatever indicates the nature of the subject, is a just medium of interpretation of the parties in relation to it, and is also a just foundation for giving an interpretation when considered relatively, different from that which it would receive if considered in the abstract. 1 *Greenleaf's Evid., sec.* 286. By ascertaining the quantity of the estate which Twigg had, in the subject matter of the devise, the Court is only putting itself in the place of the testator, and thus enabling itself to determine the meaning of the devise. 1 *Greenleaf on Ev., sec.* 287, *and note* 3, *proposition 5th.* The words, "one-half," may very well be said to be ambiguous words, whether they mean one-half interest, or one-half the property, and therefore, evidence is proper to show in what sense they were probably used by the testator. *Smith vs. Bell,* 6 *Peters.,* 75.

The complainant in this case claims, that the executor had no power to sell the land under the will, whether the debts were or were not sufficient to consume all the personal property, and all the rest of the real estate, as well as that devised to the complainant; and that to sell the lands for the payment of debts, a bill must be filed for that purpose by the creditors, which he may come in and answer and defend. The complainant not having appealed from the decree of the Court, on the question of partition, is willing to stand upon the decree as it is, and asks that it may be affirmed.

WEISEL, J., delivered the opinion of this Court.

The questions in this case have been so fully and satis-

factorily disposed of in the opinion filed by the learned gentleman who decided it below as Special Judge, that we are saved the labor of travelling over the ground covered by the opinion. We concur with him, for the reasons and upon the authorities adduced, in his construction of the will of James Twigg, in the want of power in his executor to sell the lands specifically devised to the appellee William Twigg; the want of jurisdiction in the Orphans' Court of Allegany County to direct or ratify the sale, by the executor, of said lands, and the consequent failure of title in the purchasers thereof; and in the relief granted by the decree whenever the cause shall be placed in a condition for a final decree. In examining the answer of Young and his cross bill, we find that he has sufficiently brought to the notice of the Court the equities he would be entitled to, in the event of the failure of his pretensions as a purchaser. He avers in his answer that not only the personal estate of James Twigg was insufficient for the payment of his debts, but the entire residue of the real estate was not adequate to this purpose, and that it became necessary to resort to the land in controvery. The cross-bill contains a similar averment, and that the consideration paid by him to the executor was applied in the payment of the debts. In such a state of the case, if made satisfactory by proof, the appellant Young had the right to be substituted in equity to the rights of creditors to the extent of the application of the purchase money paid by him, to creditors, regard being had to the portion of debts which would properly fall upon the land purchased by him, and specifically devised to William Twigg, upon a proper ascertainment of the same. Young, as well as his predecessor in the purchase, Daniels, were parties to these proceedings and before the Court, and sufficient allegations of equities having been made, as already stated, it was competent for the Court to do equity in

these proceedings to all the parties.  We therefore think that the Court below was premature in granting the relief decreed, and that it was its duty, as a preliminary step to a final decree, to have ordered an account in such form as to have exhibited the precise amount for which Young would be substituted for creditors in reference to the lands purchased by him, to be affected by the relief prayed ; this relief to be finally granted upon his being reimbursed the amount so found, by the devisee William Twigg.  We will therefore reverse the decree of the Circuit Court for Allegany County, and remand the cause for further proceedings, and with these instructions : the cause and proceedings therein to be referred to the Auditor of said Circuit Court for Allegany County, directing him to state an account, from proofs in the cause and testimony to be taken and returned by him, of the personal estate of the said James Twigg, the testator, showing the amount and character of his debts at the time of his decease, and their proper distribution from the personalty after the allowance of funeral and other expenses, and executor's commissions, entitled to priority in the administration.  He will also ascertain, by proof, the value of the real estate of said deceased, and show what portion thereof, if any, was selected and occupied by his widow for her dower, distinguishing the value of the lands specifically devised in the third clause of his will to the appellee William Twigg, such valuation to be confined to or about the time of the sale of said land to Young by Hartley, as executor.  He will then charge upon said land its due proportion of the debts of said testator remaining after the application of the personalty.  The Auditor will also ascertain upon proof, (as matters that may be proper for the future notice of the Court in its action upon the audit,) how much money was paid by Daniels on his purchase, and how the same was applied, and how much by Young with its application.  In stating

the account, the Auditor is not to treat or regard the accounts in the Orphans' Court of Allegany County, as conclusive upon the devisee William Twigg, who, as is shown, was an infant during those settlements. They are but *prima facie*. The said William Twigg, as well as other parties interested, are to have notice of the time and place of stating said account and taking the necessary proof; they will be at liberty to surcharge and falsify, and to adduce competent proof and witnesses on their behalf, and the account is to be so stated as to present a true and faithful administration of the personalty, and of all other matters to be embraced; the whole to be reported to said Circuit Court for exceptions and ratification after the usual notice under its rules and practice. And after ratification, such decree is to be passed as will provide for all the relief granted in the decree appealed from, after reimbursement to Young by William Twigg, of the amount to which he shall be decreed to be justly entitled, by way of substitution to the rights of the creditors of said James Twigg. The costs of this appeal to be paid by the appellee William Twigg; the costs in the Court below to abide the final result.

*Decree reversed and*
*cause remanded for*
*further proceedings.*

(Decided 23d July, 1867.)