# FLANAGAN *v.* FLANAGAN

[No. 66, September Term, 1973.]

*Decided November 21, 1973.*

336

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William W. Grant*, with whom was *Mary Ellen Brooke* on the brief, for appellant.

*John F. Lillard, Jr.*, for appellee.

DIGGES, J., delivered the opinion of the Court.

*Marriage* is defined in *The Devil's Dictionary* as "a community consisting of a master, a mistress, and two slaves, making in all, two." [1] Conceivably, it was the dawning of a realization that this definition of matrimony might accurately describe their relationship which precipitated Raymond and Bonnie Flanagan's marital separation. This severance and the passing of five years without reconciliation were alleged by the respondent, Raymond, in his bill of complaint as grounds for a divorce *a vinculo matrimonii* from his spouse, the petitioner. Instead of recounting the rather complex factual and procedural history of this case, already adequately delineated in the opinions of the Court of Special Appeals in *Flanagan v. Flanagan*, 14 Md. App. 648, 288 A. 2d 225 (1972) and *Flanagan v. Flanagan*, 17 Md. App. 90, 299 A. 2d 520 (1973), we proceed directly to a consideration of the single issue to which we have limited the granting of certiorari. With commendable agreement, the parties have spelled out the question to be determined as follows:

---

1. *A. Bierce, The Enlarged Devil's Dictionary* 194 (1967).

"Whether the Court may consider the alleged fault of the wife in determining her right to alimony and in fixing the amount thereof where a divorce is granted on the basis of five years' uninterrupted separation of the parties without cohabitation? "

In questing for a divorce, the respondent has relied upon the following legislative pronouncement applicable at the time his complaint was filed:

"Upon a hearing of any bill for a divorce, the court may decree a divorce a vinculo matrimonii for the following causes, to wit: . . . on the application of either party when the husband and wife have lived separate and apart without any cohabitation and without interruption for five years. A plea of res judicata or of recrimination with respect to any other provisions of this section shall not be a bar to either party obtaining a divorce [on] this . . . ground." Maryland Code (1957, 1973 Repl. Vol.), Art. 16, § 24.[2]

By relying on this "no fault" portion of § 24, Raymond has effectively precluded the use of culpability and recrimination as a defense to his bill which seeks only a divorce. Our opinions dealing with voluntary separation (also a no fault ground), *Hughes v. Hughes*, 216 Md. 374, 140 A. 2d 649 (1958); *Matysek v. Matysek*, 212 Md. 44, 128 A. 2d 627 (1957), and the wording of the statute relied on here make this verity abundantly clear. Therefore, it would not be Promethean for us to now say that the General Assembly by adopting nonculpatory grounds for divorce has introduced a new social policy into the laws of this State; and that, in doing so, it has rejected the teachings of the early Christians[3] by adopting the thinking of "modern persons." While some may cry out, as did Cicero in his day,

---

2. Since the institution of this suit the time period was reduced from five to three years by Ch. 699, Laws of Maryland 1973.

3. When the question was asked, "Is it lawful for a man to put away his wife for every cause?" The New Testament of the Bible teaches: "What therefore God hath joined together, let not man put asunder." Matthew 19:3-6 (King James).

*"O tempora! O mores!"*, absent constitutional objections, it is not our prerogative to question the wisdom of this legislation but only to apply that which has been authorized by the General Assembly to the circumstances of this particular case. Accordingly, once the existence of the elements set forth in the statute has been demonstrated, a decree of divorce must be granted.

With this statement both petitioner and respondent are again in agreement. However, they part company when the wife, seeking support, additionally argues that "fault is not in any place an element of the case and therefore is not to be considered in awarding alimony." Despite the appealing simplicity of this position, we are convinced quite to the contrary. A decision as to the proper award of alimony, while dependent upon the existence of grounds for divorce either *a vinculo* or *a mensa*, is separate and apart from that portion of the decree which grants the divorce.

The basis for the court's power to grant alimony is contained in Art. 16, §§ 2 and 3 of the Code (1957, 1973 Repl. Vol.), with § 3 in its entirety providing: "In cases where a divorce is decreed, alimony may be awarded." [4] We have consistently construed this section when applied in connection with divorces on nonculpatory grounds to permit an allowance of alimony to the wife regardless of who originally initiated the action. *Hughes v. Hughes*, 216 Md. at 377; *Foote v. Foote*, 190 Md. 171, 57 A. 2d 804 (1948). This is so because when a divorce *a vinculo* is given to one spouse on the grounds of a five year separation of the parties, it can hardly be contended that this grant was not as much a decree in favor of one as the other. Therefore, in any suit for divorce on nonculpatory grounds, dissolution of the marriage permits the court to consider the granting of alimony so long as that question is put in issue by either the original bill or a cross-bill, or by requesting such affirmative relief in an answer. *See Munich Co. v. United Surety Co.*, 113 Md. 200, 77 A. 579 (1910); *Young v. Twigg*, 27 Md. 620 (1867).

---

4. Section 2 provides: "The courts of equity of this State shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there."

Once the issue is raised the opposing party may respond in any appropriate manner to this request.

The history of alimony as it pertains to Maryland has been frequently chronicled in the annals of this Court. *See, e.g., Courson v. Courson,* 213 Md. 183, 185-86, 129 A. 2d 917 (1957). We, therefore, refrain from uttering once more that tale so often told.

There are certain maxims related in those cases which bear repeating in explanation of our decision in this case. We say this because although the authority for allowing alimony is statutory, the standard governing its award is judicial. *Willoughby v. Willoughby,* 256 Md. 590, 261 A. 2d 452 (1970). This Court in many decisions has indicated factors the trial court should consider in arriving at a proper award of alimony. Our statement enumerating some of these factors in *Timanus v. Timanus,* 178 Md. 640, 642, 16 A. 2d 918 (1940) has been frequently repeated in subsequent cases:

> "It is a general rule that a court, before determining the award of alimony, should consider the maintenance of the wife in accordance with the husband's duty to support her suitably, together with the husband's wealth and earning capacity. In addition to the financial circumstances of the parties, the court should also usually consider their station in life, their age and physical condition, ability to work, the length of time they lived together, the *circumstances leading up to the separation, the fault which destroyed the home,* and their respective responsibilities for the care and support of the children." (Emphasis added.)

In addition, we have made it clear that alimony is based upon need and is never a punitive measure. *Danziger v. Danziger,* 208 Md. 469, 118 A. 2d 653 (1955).

Throughout the years, our cases have said that when a wife's fault precludes her from procuring a divorce she is prevented from obtaining alimony. *Stein v. Stein,* 251 Md. 300, 302, 247 A. 2d 266 (1968); *Keys v. Keys,* 251 Md. 247, 247

A. 2d 282 (1968) and the cases cited in each. This result was axiomatic as a spouse's right to obtain a divorce, either *a vinculo* or *a mensa*, is a requirement for the obtention of alimony—ergo, no right to divorce, no right to alimony. But those cases are inapplicable here because "no fault divorce" changes the predicament in which she would otherwise find herself, as either party regardless of fault can secure a divorce if he or she can meet the requirements of one of the authorized nonculpatory grounds. On the other hand, the previous opinions of this Court mentioned earlier, which establish the standards for fixing alimony in suits based on culpability, are applicable and make facile our determination that fault is one of the several factors to be considered in properly awarding alimony in a nonculpatory divorce as well. This is logically so and there is nothing in the public policy of Maryland as expressed in the statute to the contrary.

The decisions of our sister states on this subject are of little assistance to us in that they largely depend upon the particular wording of their statutes and case law. *See, e. g., Jolliffe v. Jolliffe,* 76 Idaho 95, 278 P. 2d 200 (1954); *Sandlin v. Sandlin,* 289 Ky. 290, 158 S.W.2d 635 (1942); *Guy v. Guy,* 210 Va. 536, 172 S.E.2d 735 (1970); *Kelly v. Kelly,* 179 So. 2d 458 (La. App. 1965). A case presenting a position contrary to that expressed herein is *In Re Marriage of Williams,* 199 N.W.2d 339 (Iowa 1972) in which the Supreme Court of Iowa declined to permit the admission of any evidence of fault when an Iowa court determines a proper alimony award. However, that case is distinguishable from the one before this Court, as in Iowa, unlike in Maryland, the legislature has eliminated all fault grounds from its divorce statute. In *Williams* the court concluded that the Iowa statute indicated a legislative purpose to eliminate the concept of fault entirely from divorce actions. Our Legislature, on the other hand, has chosen to add additional grounds to this State's divorce statute rather than to repeal it and re-enact a law confined to nonculpatory grounds. This indicates, we think, that the General Assembly intends that when alimony is permitted the factors to be weighed in determining an

appropriate award are considered in the same light in Maryland whether the bill for divorce is brought on a fault or no fault basis.

The extent to which fault affects an award which accompanies a decree of divorce on no fault grounds, however, is a more difficult decision. What is an appropriate award of alimony is governed by the principles of equity regardless of the grounds for divorce. Its resolution has always been one of weighing countervailing interests. While the parties' economic circumstances are certainly of great importance,[5] any of their conduct which contributed to the destruction of the marriage is also relevant to a determination of what is just. *Willoughby v. Willoughby*, 256 Md. at 593-94. As each factual situation is unique, it is obvious that the chancellor must be entrusted with wide discretion in awarding alimony. This would include those cases in which he is required to consider the culpability of the parties by taking into account the circumstances leading up to that point in time when the couple, who have been joined in marriage to become one, separate and become two once more, as well as the fault which destroyed the home. However, in those suits in which the actions of the party seeking such a pecuniary award constitute the sole cause for the demise of the marriage, and this wrongdoing consists of acts which are either adultery or abandonment, then, except in rare instances where there exist extremely extenuating circumstances, the award of any alimony would be an abuse of discretion. We have designated adultery and abandonment not on a whim, but because these are the only direct culpatory deeds that the Legislature has selected by name which either authorize or can ripen into grounds for an *a vinculo* divorce thereby indicating that it considers them the more heinous of the acts which can terminate a marriage. But, if there exists separation causing culpability other than adultery or abandonment on one side, or fault on

---

5. Under Code (1957, 1973 Repl. Vol.), Art. 16, § 5 alimony or counsel fees may not be awarded ". . . unless it shall appear from the evidence that the wife's income is insufficient to care for her needs."

both sides which caused the separation of the parties, the chancellor should consider the parties' degree of blame as well as their relative guilt in those cases where applicable and, in conjunction with the factors quoted earlier in this opinion, decide upon the proper award. In this thought process, the greater degree of fault on the part of the wife demonstrated, the greater the need which she must show to entitle her to an award of alimony appropriate to the circumstances otherwise existing.

In this case, as the chancellor refused to admit any evidence concerning fault and accordingly did not consider culpability in making his award, we agree with the Court of Special Appeals that the part of the decree which awarded alimony must be vacated.

> *Judgment of the Court of Special Appeals which remands without affirmance or reversal that part of the trial court's decree awarding alimony to the petitioner, Bonnie J. Flanagan, affirmed.*
>
> *The case is remanded to the Court of Special Appeals for remand to the Circuit Court for Prince George's County for further proceedings in accordance with this opinion.*
>
> *Costs in this Court. including $500.00 counsel fee to petitioner's co-counsel for their representation of her in this Court to be paid by respondent, Raymond J. Flanagan.*