## MARION H. PAYNE *v.* PETER M. PAYNE

[No. 1297, September Term, 1975.]

*Decided December 1, 1976.*

The cause was argued before MARVIN H. SMITH and JOHN C. ELDRIDGE, Associate Judges of the Court of Appeals and JOSEPH M. MATHIAS, Associate Judge of the Sixth Judicial Circuit, all specially assigned.

*Victor A. Houlon,* with whom were *Pickett, Houlon & Berman* on the brief, for appellant.

*Charles M. Cockerill* for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

On March 31, 1975, the appellant, Marion H. Payne, filed a bill of complaint for a divorce *a vinculo matrimonii* from her husband on the grounds of desertion, abandonment, adultery and voluntary separation. Mrs. Payne also requested "a reasonable sum" for alimony. Her husband, Peter Payne, filed a cross bill of complaint seeking an absolute divorce on the ground of constructive desertion. Subsequently, Mr. Payne amended his original complaint to include an allegation of adultery.

The testimony at the trial was extensive and often conflicting, and upon the conclusion of the evidence the trial court made several findings of fact. The court determined

that sexual relations ceased between the parties sometime between 1967 and 1969. Mrs. Payne testified that she refused sexual relations with her husband because he drank excessively, habitually stayed out until the early hours of the morning and generally did not include her in family affairs. The trial court, however, found that Mrs. Payne's withdrawal from sexual relations with her husband was not based upon any "substantial reason." The trial court further determined that "Mrs. Payne's attitude towards Mr. Payne was one that was inconsistent with acceptable standards of conduct between the husband and wife and that her general description of her husband . . . in the presence of others [was] demeaning . . . humiliating, and . . . persistent." With respect to Mrs. Payne's allegations of her husband's adulterous behavior and physical abuse, the trial court found that the evidence was insufficient to sustain the accusations. The trial court determined that the parties voluntarily separated on September 30, 1973. A divorce *a vinculo matrimonii* was granted to Mrs. Payne on the ground of voluntary separation "only because it . . . [was] the best way to terminate this marriage." The court, however, denied Mrs. Payne's request for alimony.

On this appeal by Mrs. Payne from the decree, there is no challenge to the granting of the divorce on the ground of voluntary separation. The appeal attacks the decree only insofar as alimony was denied Mrs. Payne. It is claimed that the trial court committed several errors which are relevant to the question of alimony.

(1)

At the trial, Mrs. Payne contended that she was entitled to a reasonable sum for support. Mrs. Payne argued that at the age of 57 she no longer possessed employable skills nor was she financially able to regain her secretarial skills which had lapsed during the 20 years of her marriage. The chancellor rejected the argument, stating "that the husband, because the wife is the most culpable . . . . , will be required to contribute nothing." On this appeal, Mrs. Payne, in addition

to challenging the trial court's findings, also attacks the standard employed by the court in denying alimony.

In *Flanagan v. Flanagan*, 270 Md. 335, 311 A. 2d 407 (1973), involving one of the "no fault" grounds for an absolute divorce,[1] the Court of Appeals indicated that fault is to be considered in an alimony determination even though the divorce is granted on a non-culpatory ground. The Court stated that when the spouse seeking alimony has been adjudged the sole contributing party to the separation and the culpable act is either adultery or abandonment, alimony should be granted only when extremely extenuating circumstances are shown. 270 Md. at 341; *Flood v. Flood*, 24 Md. App. 395, 330 A. 2d 715 (1975). However, if there exists "fault on both sides which cause the separation of the parties," the chancellor must consider several factors other than the parties' relative guilt. 270 Md. at 341-342; *Flood v. Flood, supra*, 24 Md. App. at 399. The several factors to be considered were enumerated in *Timanus v. Timanus*, 178 Md. 640, 16 A. 2d 918 (1940), subsequently repeated in *Flanagan v. Flanagan, supra*, 270 Md. at 339, and most recently emphasized by this court in *Flood v. Flood, supra*, 24 Md. App. at 399 n. 8:

> "It is a general rule that a court, before determining the award of alimony, should consider the maintenance of the wife in accordance with the husband's duty to support her suitably, together with the husband's wealth and earning capacity. In addition to the financial circumstances of the parties, the court should also usually consider their station in life, their age and physical condition,

---

1. As provided by the Maryland Code (1957, 1973 Repl. Vol., 1976 Cum. Supp.), Art. 16, § 24, there are two no fault grounds upon which a divorce *a vinculo* may be granted. Art. 16, § 24, provides, in pertinent part, that a divorce may be granted for the following causes:

". . . fifthly, when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for twelve consecutive months prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation; . . . seventhly, on the application of either party when the husband and wife have lived separate and apart without any cohabitation and without interruption for three years. . . ."

ability to work, the length of time they lived together, the circumstances leading up to the separation, the fault which destroyed the home, and their respective responsibilities for the care and support of the children." (178 Md. at 642.)

Although there was testimony at the trial to indicate that Mrs. Payne's behavior in withdrawing from the marital relationship constituted constructive desertion, there was also testimony presented that Mr. Payne was engaging in adulterous behavior. Nevertheless, the marriage having disintegrated beyond the hope of reconciliation, the trial court chose to terminate the union on the ground of voluntary separation. This is not a case in which one spouse has been found by the court to be the "sole cause" of the demise of the marriage. Instead, the trial court here found Mrs. Payne's "culpability [to be] greater than his." The trial court's finding was that some fault existed on the part of both of the spouses, and that, even though there was a mutuality of fault, Mrs. Payne's behavior was the more culpable.

Nevertheless, instead of determining whether to award alimony in light of all the factors relative to that issue, the trial judge in this case appeared to limit his consideration to the respective culpability of the parties. Although the culpability of the parties is a major factor to be considered, it is not the sole factor governing the grant or denial of alimony. As pointed out above, culpability is only one of several factors to be weighed in deciding whether to award alimony in a case such as this. The greater the degree of fault having been assigned to Mrs. Payne, however, the greater the need which she must demonstrate with respect to the factors quoted above to entitle her to the award, *Flanagan v. Flanagan, supra,* 270 Md. at 342.

We conclude that the trial court's denial of alimony in this case was based on an erroneous standard. Therefore, the case must be remanded for a rehearing with respect to alimony with a re-determination based upon all of the several factors to be considered.

(2)

Mrs. Payne also contends that the trial court erred in refusing to admit into evidence a computer print-out obtained from the State Motor Vehicle Administration. If the trial court had admitted the print-out into evidence, it would have tended to indicate that Mr. Payne and his alleged girl friend shared the same address. Consequently, Mrs. Payne's allegation against her husband of adulterous behavior may have been further substantiated and the relative guilt of the parties significantly altered.

Mrs. Payne secured certified copies of the title and registration to the automobile owned by Mr. Payne's alleged girl friend. There is no issue with respect to these certified documents, and their admissibility is not contested. However, the trial court refused to admit into evidence a computer print-out containing the recent change in the address on the motor vehicle registration documents. The trial court seemed to be of the view that the print-out could not be part of the original certification listing the registration materials, since it was a separate document and had been requested and attached subsequently.

We disagree. The print-out was in effect an amendment to the registration documents, correcting the address appearing on the documents. Although the print-out was requested a few moments after the initial receipt of the certified registration materials, this does not necessarily preclude it from being part of the certification. The print-out was requested in the context of what essentially was one continuous transaction. The same clerk who had processed the initial request for the documents also secured the computer print-out copy and attached it to his original certification sheet, thereby including the print-out in his original certification. Under the circumstances, the computer print-out was a certified document within the scope of Maryland Code (1974), § 10-204 of the Courts and Judicial Proceedings Article. Therefore, it was error for the trial court to refuse to admit it into evidence.

## (3)

Mrs. Payne next contends that the trial court erred when, over the objection of her counsel based upon the attorney-client privilege, she was required to answer whether she had been advised by her counsel not to seek employment until the divorce action had terminated. Mrs. Payne argues that, although "there were sound medical and legal reasons" underlying the advice given, the objection to the question should have been sustained because a communication of this nature by counsel to Mrs. Payne came within the purview of the attorney-client privilege.

Generally, attorney-client privilege issues arise in connection with communications made by the client to the attorney rather than those made by the attorney to the client. However, it is recognized that a communication or legal advice from an attorney to a client may be embraced by the privilege. It is sufficient for the purposes of the privilege if the communication by the attorney was made during the attorney-client relationship, related to legal matters for which the attorney's services were retained, and was based upon information received by the attorney from the client in confidence. *Burlington Industries v. Exxon Corporation,* 65 F.R.D. 26, 37 (D. Md. 1974); *United States v. United Shoe Machinery Corporation,* 89 F. Supp. 357, 359 (D. Mass. 1950); *Miller v. Anderson,* 30 Conn. Sup. 501, 294 A. 2d 344 (1972); *Russell v. Second Nat. Bank of Paterson,* 136 N.J.L. 270, 55 A. 2d 211 (1947).

Applying these principles to the present case, the advice from Mrs. Payne's attorney would appear to be within the privilege. It related to Mrs. Payne's earning capacity, which was relevant to the question of alimony. And Mrs. Payne's claim for alimony was a matter for which she had retained a lawyer, and concerning which she had obviously given him information. If the same question is asked at the hearing on remand, an objection should be sustained.

## (4)

Mrs. Payne's final contention is that the trial court erred when it sustained Mr. Payne's right to invoke the Fifth

Amendment privilege against self-incrimination with respect to questions concerning his sexual relations with unmarried women. Mrs. Payne argues that the crime of "adultery" in violation of Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 4, is committed only if the woman involved is married, and that a married man's sexual relationship with an unmarried woman does not amount to a crime. Consequently, the argument continues, there was no danger of Mr. Payne's incriminating himself.

At common law, adultery was defined as sexual intercourse with another man's wife, the test being whether or not the woman was married. R. M. Perkins, *Criminal Law*, ch. 5, § 1, p. 377 (2d ed. 1969); Clark and Marshall, *Law of Crimes* § 11.04, pp. 767-769 (7th ed. 1967). Adultery, however, was not a crime at common law [2] but was punished by the church as an ecclesiastical offense. Adultery, as defined by canon law, was a violation of the marriage vow, the test being whether or not a married person engaged in sexual relations with someone other than his or her spouse. R. M. Perkins, *Criminal Law*, *supra*, p. 377; Clark and Marshall, *Law of Crimes*, *supra*, p. 767.

Neither the Court of Appeals nor this court has ever decided whether the crime of adultery in violation of Art. 27, § 4, embraces the common law or canon law definition. For a discussion of this, *see Evans v. Murff*, 135 F. Supp. 907, 910-911 (D. Md. 1955). Consequently, the Maryland law with respect to adultery is unclear, and a prosecution for the crime might be instituted without regard to the marital status of the woman involved.

For a witness to be entitled to invoke the Fifth Amendment privilege against self-incrimination, it is not necessary that his testimony will with certainty lead to his criminal prosecution and conviction. Instead, there must be "reasonable cause to apprehend danger . . . ," *Hoffman v. United States*, 341 U. S. 479, 486, 71 S. Ct. 814, 818, 95 L. Ed.

---

**2.** The common law defined adultery for purposes other than a criminal prosecution. R.M. Perkins, *Criminal Law*, *supra*, p. 377.

1118 (1951). *See also Commonwealth v. Carrera*, 424 Pa. 551, 554, 227 A. 2d 627 (1967). A witness is entitled to invoke the privilege "where practically there is only a slight possibility of prosecution." *United States v. Miranti*, 253 F. 2d 135, 139 (2d Cir. 1958). As stated by the Supreme Court in *Hoffman v. United States, supra,* 341 U. S. at 486-487:

> "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

In that case, the Supreme Court reversed a contempt conviction of a witness who refused to answer certain questions, because "it was not *'perfectly clear,* from a careful consideration of all the circumstances in the case, that the . . . answer[s] *cannot possibly* have a tendency' to incriminate." (Italics in original.) 341 U. S. at 488.

In light of the uncertainty concerning the scope of the crime of adultery in Maryland, it cannot be said that the answers of Mr. Payne could not "possibly have a tendency to incriminate." Consequently, the trial court did not err in sustaining Mr. Payne's claim of privilege.

> *Judgment of the Circuit Court for Prince George's County reversed, and case remanded for proceedings consistent with this opinion.*
> *Appellee to pay costs.*