## LACCETTI *v.* LACCETTI

[No. 555, September Term, 1965.]

*Decided January 4, 1967.*

Submitted to HAMMOND, C. J., and MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

Submitted on the brief by *Victor L. Crawford*, for appellant. No brief and no appearance for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

In this divorce case, the court below, while finding that the wife had proved her husband's adultery, held that there was sufficient evidence to prove that the wife also had committed adultery and that therefore she was barred from the relief she prayed. We disagree.

The wife, Katherine May Laccetti, the appellant, filed suit against her husband, Alfonso Laccetti, the appellee, in the Circuit Court for Montgomery County, praying for a divorce *a vinculo*. In her bill the wife alleged that she and her husband had both been residents of Montgomery County for more than one year preceding the filing of the bill. She alleged that her husband deserted her in 1962 and since that time has been living in adultery with another woman. The husband in his answer denied the wife's allegations as to his desertion and adultery and alleged that it was the wife who deserted him and that she has been living in adultery with another man.

Testimony was taken before an examiner. The wife testified that she met the husband in Washington, in the District of Columbia, in 1949, and lived with him in the District in a common-law relationship. The couple held themselves out as man and wife and from 1950 the appellant used the appellee's name. They have two daughters, born respectively in 1950 and 1951. In 1953 they purchased a house in Rockville, Maryland and lived there together as man and wife until September, 1962, when the

appellee left the home. The appellant testified that her husband, since his desertion, has been living with another woman and gave detailed testimony as to that cohabitation. On cross-examination the wife testified that, until a few weeks before the hearing, she and her two daughters had been living in the same house as a Mr. Thurston and his two children. She testified that she did not occupy the same bedroom as Thurston and denied that she had ever had intercourse with him.

The wife's testimony as to her common-law marriage with the husband and as to the husband's subsequent adultery was corroborated by another daughter, Regina Thompson, 22 years of age, born to her during a prior marriage which resulted in divorce. On cross-examination, Regina testified that she had been to the house in which her mother had been living and which was also occupied by Thurston and his two sons. There were three bedrooms in the house; Regina did not know where her mother slept.

The husband, in his testimony, admitted that he and the appellant lived in a common-law relationship of husband and wife in the District of Columbia and had so lived in Maryland. He admitted living in adultery with another woman. He knew that the wife was living in the same house as Thurston but could not say that they were living together as man and wife.

After reading the testimony taken before the examiner, Judge Pugh felt that the situation required that further inquiry be made into the relationship between the wife and Thurston and summoned Thurston to testify in open court. At this hearing, Thurston testified that he had been separated from his wife for about five years; he has three boys, aged 22, 16 and 14. The two younger children live with him in a three-bedroom house in Rockville which he rents; the appellant lives in the same house with her two daughters. Thurston testified that he and his two boys occupy one bedroom, the appellant's daughters have a bedroom and she has a bedroom. Before moving into the house in Rockville, Thurston, the appellant, and their respective children, occupied another larger house in Rockville; that house had four bedrooms. Thurston said he and the appellant had an agreement under which she did the ironing and the cooking and took care of the children and that he paid the bills.

In response to questions by the court, Thurston repeatedly denied that he had ever had sexual intercourse with the appellant. He said: "I go my way and she goes hers." Thurston then asked the court if he could explain something and, with the court's permission, testified that his boys had been in trouble several times. He said that he had been told by the Juvenile Court Judge that he could not have custody of his children unless he had someone to take care of them, to cook their meals and look after them. "The whole thing of it is," he said, "I kept my kids if I got somebody to take care of the kids, and that is just the way it worked out."

In his opinion delivered after the taking of this testimony, Judge Pugh referred to the conceded fact that the husband and wife had entered into a common-law marriage in the District of Columbia. Common-law marriages are recognized in the District of Columbia. *Lee v. Lee,* 201 A. 2d 873 (D. C. App. 1964). "We have adopted the generally accepted rule that where a valid common-law marriage has been entered into in a jurisdiction which recognizes the validity of such a marriage, it will be recognized as valid in another jurisdiction, regardless of the rule which prevails in the later jurisdiction in respect to the validity of common-law marriages." *Henderson v. Henderson,* 199 Md. 449, 459, 87 A. 2d 403 (1952). As the appellant's marital status is recognized in Maryland, she is entitled to a divorce if she can show she is entitled to it under the laws of this State.

Judge Pugh did not question the fact that the husband's adultery had been satisfactorily proved in the testimony before the examiner. The judge dismissed the wife's bill of complaint, however, because he found that the circumstances presented by the evidence in the case conclusively established that the plaintiff and Thurston have had sexual relations. In his opinion, Judge Pugh said:

> "He [Thurston] denied having had sexual relations with the plaintiff. The plaintiff also denied having sexual relations with Thurston when she testified before the Examiner. She did not testify in open Court. The case rests on the question as to whether or not this

Court believes that the plaintiff and Thurston have had sexual relations while living in the same apartment or house without any other adult living therein for more than 'a year or so.' The Court does not believe that the plaintiff and Thurston have not had sexual relations during the period of 'a year or so'. For this Court to believe that they did not have sexual relations during this period, when they had ample opportunity to do so, would be naive. Nature does not operate that way."

The rules of law governing proof of adultery in this State are well established. They were summarized by Chief Judge Brune, for the Court, in *Abare v. Abare*, 221 Md. 445, 450, 157 A. 2d 427 (1960), as follows:

'[W]here adultery is charged the evidence must establish affirmatively that the alleged offense was committed. It is not necessary, however, to establish the charge of adultery by direct evidence of the commission of the act, for because of the clandestine nature of the offense it is rarely possible to obtain evidence of the commission of the act by the testimony of eyewitnesses. The offense may be inferred from the circumstances if the inference is the only natural and logical deduction to be drawn therefrom. To prove adultery, the circumstantial evidence must clearly establish (1) a disposition on the part of the defendant and the paramour to commit adultery, and (2) an opportunity to commit the offense. After considering these and all other facts and circumstances in the case, the court then determines whether the evidence would convince an unprejudiced and cautious person of the guilt of the defendant.'

In the case before us, there was ample testimony as to the opportunity of the appellant and Thurston to commit adultery, but there was not an iota of evidence to prove a disposition on their part, or on the part of either of them, to commit the offense.

In *Riley v. Riley,* 239 Md. 363, 211 A. 2d 748 (1965), while the primary question on appeal was the custody of the children, the Court reviewed the finding of the Chancellor, on the husband's cross-bill for a divorce, that the wife had not been guilty of adultery. The wife had shared a "double house" with another man for about a year; the house had only one entrance and a common stairway. The wife's uncontradicted testimony was that the doors between the two bedrooms occupied by her and her child and the man's bedroom were always kept locked. Judge Horney, for the Court, said, at 239 Md. 366: "While whether or not a disposition to commit adultery has been shown to exist must necessarily depend on the facts of each case, the record here is devoid of any evidence which would support such an inference. Clearly there was here no showing of an adulterous disposition * * *." In *Smith v. Smith,* 225 Md. 282, 286, 170 A. 2d 195 (1961), in which it was found that the evidence did not support the trial court's finding of adultery, Judge Henderson, for the Court, pointed out that there was no evidence of an adulterous disposition on the part of the wife's alleged paramour and said: "Something more than mere suspicion or indiscretion is necessary to overcome the presumption of innocence."

In the case before us, there is not a scintilla of evidence of an adulterous disposition either of the wife or of Thurston. The learned Chancellor's disbelief of their denials does not take the place of the affirmative evidence which the law requires. Whether Thurston's explanation of the appellant's presence in his home for the purpose of taking care of his children and the house is or is not true, adultery can not be predicated on the assumed natural inclination of persons living in the same abode, without any evidence whatsoever of any manifestation of such an inclination.

The rule that to support a finding of adultery there must be evidence of disposition as well as of opportunity is not based on legal naivete. Rather, it is an acknowledgment of judicial limitations. Absent the searchlight of evidentiary facts, the law recognizes the infinite variations in personalities whose interplay is unpredictable. Even within the framework of constant physical proximity, without some evidence of inclination, the relation-

ship of a man and woman can only be a matter of speculation; in the range of those relationships, even innocence is possible.

*Decree reversed; case remanded for further proceedings in accordance with the above opinion; costs to be paid by appellee.*