# MARK A. WALLACE *v.* ELLEN WALLACE

[No. 78, September Term, 1980.]

*Decided May 5, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*William J. Chen, Jr.,* for appellant.

*Ronald L. Ogens* for appellee.

DIGGES, J., delivered the opinion of the Court.

We are requested in this appeal to find error in the action of the chancellor ordering petitioner Dr. Mark Wallace to pay permanent alimony to his former wife, respondent Ellen Wallace. Finding no legal transgression in the decretal award, we shall not disturb the intermediate appellate court's affirmance of the circuit court's judgment.

While the facts of the case are neither complex nor disputed, since they are central to the result reached, we shall describe the circumstances with a modicum of specificity. The parties to this proceeding were married in New York City in 1967 and, after moving to Rockville, Maryland, where Dr. Wallace later commenced the practice of his profession of dentistry, the family was enlarged with the arrival of two children, one born in 1971 and the other in 1974. This placid state of familial affairs was not to endure, however, for the hiring by the petitioner of Janet Honeycutt (his present wife) as an assistant in his dental

office in December, 1975, bode extinction for the parties' marriage. Within three months, on March 31, 1976, Dr. Wallace abandoned the marital home, and soon thereafter by his own admission commenced an adulterous relationship with Mrs. Honeycutt. Indeed, later that year in September, petitioner took up a common residence with the paramour. Respondent, now the estranged wife, however, was not to be utterly forsaken, for it is stipulated that she also initiated an illicit relationship with a beau sometime in May, 1976, within two months of the parties' separation. Nothing further bearing on the issues raised by this appeal occurred until Mrs. Wallace, on March 21, 1977, filed suit in the Circuit Court for Montgomery County seeking a divorce *a mensa, et thoro* on the ground of her husband's desertion, custody of the couple's two minor children, child support and alimony both *pendente lite* and permanent as well as reasonable counsel fees. The circuit court, having obtained jurisdiction over Dr. Wallace through personal service, awarded temporary custodial and monetary relief, including alimony *pendente lite,* to the wife, an order with which the husband for awhile complied.

Dr. Wallace, however, had other plans regarding the duration of his marriage, for he moved to the state of Virginia after the entry of the *pendente lite* order, lived there for the requisite six month period necessary to establish that state as his domicile, and on April 5, 1978, obtained a divorce *a vinculo matrimonii* in an appropriate Virginia court based on that state's statutory non-culpable ground that the parties had lived separate and apart, without interruption or cohabitation, for a period exceeding one year. This absolute divorce was obtained *ex parte,* in that Mrs. Wallace neither was served personally with process nor entered her appearance individually or through counsel, although the parties agree that constructive notice of the Virginia proceeding was obtained through the mailing of an order of publication to the respondent. It took the newly liberated Dr. Wallace only a few days, on advice of legal counsel, to cease payment of the Maryland court ordered temporary alimony; it took Mrs. Wallace only a few weeks to

amend her previously filed bill of complaint. On June 6, 1978, the former wife sought by that amendment, among other relief, permanent alimony. In this new complaint, she abandoned, in light of the Virginia decree (which she in no way collaterally attacks), her prior claim for an adjudication of divorce by the Maryland court. The matter was referred to chancery master Edward L. Foster who, in a commendably thorough report, made findings of fact and recommended, *inter alia,* that the circuit court award permanent alimony to the former wife in the amount of $300.00 per month; that judgment be entered in favor of Mrs. Wallace for the approximately $5,000 in accrued alimony *pendente lite* arrearages (payable at the rate of $150.00 per month); that custody of the two children, by this time uncontested by the father, be awarded to Mrs. Wallace; and that child support in the amount of $325.00 per month be ordered to be paid by Dr. Wallace for each child. The petitioner filed exceptions to the report and its recommendations, which were overruled by the chancellor without a hearing, who then substantially adopted the master's recommendations in the final decree of October 23, 1979. Dr. Wallace appealed to the Court of Special Appeals and then, not feeling vindicated by that court's affirmance of the trial court's decree, *Wallace v. Wallace,* 46 Md. App. 213, 416 A.2d 1317 (1980), petitioned this Court for certiorari. We issued our writ limited solely to the question whether the chancellor erred in awarding alimony to Mrs. Wallace, in view of her adulterous conduct.

In order that we adequately identify at the outset the multifarious issues raised by the deceptively simple question presented, we commence by providing for the reader a short synopsis of what we perceive to be the petitioner's assorted arguments. It appears that Dr. Wallace's starting point is a contention that his former wife has not, and indeed cannot, demonstrate the existence of grounds that would entitle (or would have entitled) her to a divorce from her husband in a Maryland court. Since the law of this State, as he perceives it, requires this showing as a prerequisite to a grant of alimony, Mrs. Wallace, not having met her burden, is not entitled to this support and the award

of it by the chancellor is in error. The anatomy of the argument at this juncture becomes slightly more complex: As it goes, Mrs. Wallace may not avail herself of her former husband's desertion as a ground for divorce because, under the doctrine of recrimination, her post-separation but pre-divorce adulterous conduct constitutes an effective bar to the obtention of a divorce on this ground. Furthermore, the doctor suggests that in attempting to meet her burden, his former wife cannot rely on the ground of a voluntary separation of the parties for twelve months as the evidence is insufficient at law to support the finding (made by the master and adopted by the chancellor) that the parties had a mutual agreement indicating a common intent to terminate the marriage. Refined further, the argument envisions that even if this Court were to conclude that a sufficient agreement existed to form the foundation for a voluntary separation, the recriminatory defense arising from the wife's adultery is available by statute to defeat even this non-culpatory ground for divorce. Recognizing that this proposition may not meet with our favor, the petitioner retreats to a final assertion that the adulterous conduct of the respondent, even assuming the existence of a ground for divorce unencumbered by the recriminatory defense, destroys her entitlement to receive alimony. To this series of contentions, Mrs. Wallace counters that as she demonstrated the existence of grounds which would have entitled her to a divorce in Maryland, the award of alimony by the chancellor was proper.[1] Moreover, the former wife makes an additional assertion which brings into focus the final issue arising from this appeal. That is, because the Virginia "no-fault" decree of divorce operates in her favor as much as her husband's, she claims as an alternate basis for the alimony award by the Maryland court the identical ground upon which her former husband in fact sought, and received, the foreign divorce.

---

[1]. Mrs. Wallace apparently concedes that her adultery constitutes recrimination that effectively bars any divorce from her husband sought on a fault ground. *See* Matakieff v. Matakieff, 246 Md. 23, 226 A.2d 887 (1967); Courson v. Courson, 208 Md. 171, 117 A.2d 850 (1955).

A brief review of a few principles well ingrained in Maryland domestic relations law provides the necessary foundation for the proper disposition of this case. As we have recognized many times in the past, "[d]ivorce, unknown at common law, is entirely a creature of statute." *Bender v. Bender,* 282 Md. 525, 529, 386 A.2d 772, 775 (1978); *Altman v. Altman,* 282 Md. 483, 490, 386 A.2d 766, 770 (1978); *Emerson v. Emerson,* 120 Md. 584, 589, 87 A. 1033, 1035 (1913). Similarly, the authority to award alimony has by statute since 1777 been reposed in the courts of equity of this State. *Bender v. Bender, supra* at 530, 386 A.2d at 776; *Altman v. Altman, supra* at 491, 386 A.2d at 770-71. While at one time the right to receive alimony, it being a by-product of the marital obligation of support, was viewed as extinguished at the time of the severance of the marriage relationship, *see Upham v. Upham,* 238 Md. 261, 265, 208 A.2d 611, 613 (1965); *Brewster v. Brewster,* 204 Md. 501, 506-07, 105 A.2d 232, 235-36 (1954), in more recent years, this Court, as well as those of many other states, have made substantial inroads upon this "metaphysical concept of the nature of alimony." *Altman v. Altman,* 282 Md. at 492, 386 A.2d at 771 (quoting H. Clark, *The Law of Domestic Relations in the United States* § 14.4 at 438 (1968)); *Dackman v. Dackman,* 252 Md. 331, 250 A.2d 60 (1969). Thus, in *Altman,* we recognized that this " 'narrow, artificial, and unrealistic . . . judicial interpretation of alimony' places an estranged wife in a manifestly unfair predicament . . . [by requiring her either] to submit to the jurisdiction of a foreign court, where, as an out-of-state defendant, she is under a distinct disadvantage in seeking to recover alimony . . . [or to] disregard the foreign action altogether, thereby foregoing all right to alimony payments in the state of her domicile." *Altman v. Altman, supra* at 492-93, 386 A.2d at 771-72 (quoting from *Johnson v. Johnson,* 202 Md. 547, 558, 97 A.2d 330, 98 A.2d 276-78 (1953) (Hammond, J., concurring), *cert. denied,* 346 U.S. 874 (1953)). As a matter of public policy, in that case we refused to further require this State, the jurisdiction retaining the paramount interest in the welfare of the domiciliary

alimony claimant, to abdicate its superior interest in the support award simply because the marital tie had previously been severed by a valid divorce rendered by a foreign court lacking personal jurisdiction over the claimant. *Id.* at 492-94, 386 A.2d at 772.

 This holding, of course, involved only the authority of the equity court to award alimony in the case of the itinerant spouse, and in no way relieved a claimant from making the showing, otherwise required by the law of this State, that would entitle her to such relief. One element of that evidentiary burden, at times impossible to surmount, is the requirement that the spouse seeking the award either obtain, or prove grounds that would entitle that party to, a divorce either *a mensa et thoro* or *a vinculo matrimonii. Bender v. Bender, supra* at 529, 386 A.2d at 775; *Flanagan v. Flanagan,* 270 Md. 335, 340, 311 A.2d 407, 410 (1973); *Stein v. Stein,* 251 Md. 300, 302, 247 A.2d 266, 267 (1968); *Russell v. Russell,* 224 Md. 329, 331, 167 A.2d 770, 771 (1961); *Outlaw v. Outlaw,* 118 Md. 498, 502, 84 A. 383, 384-85 (1912); *Dunnock v. Dunnock,* 3 Md. Chancery 140, 142-43 (1852). This command, established as well as any principle in the law of this State, is founded upon "the meaning of the term [alimony] as it was commonly understood when the legislature in 1841 [by chapter 262 of the laws of that year] first provided for such an award as an incident to [an absolute] divorce." *Bender v. Bender, supra* at 530, 386 A.2d at 776. Since, at the time of that enactment, alimony was provided only where grounds which would constitute a sufficient foundation in England for awarding a divorce *a mensa et thoro* to the wife were shown, the legislature, in authorizing the courts of this State to decree a divorce *a vinculo matrimonii* for the first time in 1841, " 'intended to provide for alimony of the same character and limitations as the alimony the courts had so long dealt with' in the context of the divorce *a mensa et thoro." Altman v. Altman, supra* at 491-92, 386 A.2d at 771 (quoting *Emerson v. Emerson,* 120 Md. 584, 590-91, 87 A. 1033, 1036 (1913)).

This concept of alimony, keyed as it is to a perception of "fault" on the part of the husband, has been substantially

eroded by the national trend (to which Maryland has not been insensitive) toward divorces based upon a separation of the parties independent of an assessment of statutorily delineated fault.[2] See Code (1957, 1981 Repl. Vol.), Art. 16, §§ 24, 25. Since 1973, a divorce from bed and board has been available in this State on the "no-fault" ground of a voluntary separation of any duration without cohabitation when accompanied by no reasonable expectation of reconcilation. See 1973 Laws of Maryland, ch. 95. An absolute divorce can now be obtained on at least two "no-fault" grounds: (i) voluntary separation without cohabitation where there is no reasonable expectation of reconciliation for twelve consecutive months prior to the filing of the bill of complaint (existing since 1937, where the requisite separation was 5 years, see 1937 Laws of Maryland, ch. 396); and (ii) on application by either party where the separation without cohabitation has spanned the period of three years without interruption (existing since 1969 by ch. 656 of the Acts of that year, although as originally enacted the requisite period was 5 years).[3] Because a spouse's right to obtain alimony is in part

2. It is not only the interplay between fault and alimony that has become obscured, however, for, in the broader context, "alimony" as this term is used today bears only slight resemblance to the meaning ascribed to that word by the English Ecclesiastical Courts. Perhaps the most fundamental departure from the notions of traditional alimony occurred in 1841, when the General Assembly provided that the courts of equity could award alimony in all cases where divorces were granted, including a vinculo divorces. Because alimony in the traditional sense was purely an incident of the marital relationship, providing for the award of it upon the destruction of that relationship by an absolute divorce effected a substantial enlargement of the nature of alimony. See Johnson v. Johnson, 202 Md. 547, 558-62, 98 A.2d 276, 278 (1953) (Hammond, J., concurring), cert denied, 346 U.S. 874 (1953). We have also recognized that alimony, under the Maryland statute, may be awarded to a spouse where the marriage is void ab initio, and hence, where there never existed a valid marital relationship out of which the duty of support (and thus alimony) arises. See Clayton v. Clayton, 231 Md. 74, 188 A.2d 550 (1963). Moreover, it should be observed that, historically, alimony was available only to the wife; our present statute permits an award to either spouse, see Code (1957, 1981 Repl. Vol.), Art. 16, § 1 (a). The conclusion is inescapable that alimony as we perceive it today, while owing its heritage to its ecclesiastical ancestor, is spousal support of a markedly expanded scope.

3. There are other grounds for divorce that would appear to be encompassed within the "no-fault" concept. See Code (1957, 1981 Repl. Vol.), Art. 16, § 24.

contingent on that party's showing of entitlement to a divorce, the adoption of these essentially "no-fault" grounds has had the effect of dilating the factual circumstances which can form the foundation for an award of alimony. We recognized as much in *Flanagan* where it was stated that the rule preventing a wife at fault from obtaining a divorce, and thus alimony, was inapplicable to the "no-fault divorce," since either party regardless of fault can secure such a divorce if the statutory requirements are met. 270 Md. at 339-40, 331 A.2d at 409-10. Therefore, in any suit where a non-culpatory ground is shown, the court may consider the granting of alimony so long as that question is properly put in issue. *Id.* at 338, 311 A.2d at 409. Having a firm grasp on these general principles, we proceed to the case at bar.

As we see it, there are two theories upon which Mrs. Wallace may rely to establish the necessary predicate, grounds for a divorce either *a mensa* or *a vinculo,* for the obtention by her of alimony from her former husband. Initially, however, we note that the enrolled Virginia divorce decree is entitled to "presumptive validity and full faith and credit in Maryland unless and until it is judicially impeached...," *Dackman v. Dackman, supra* at 336, 250 A.2d at 63, a tack not pursued by Mrs. Wallace here. Curiously as a result of this, respondent is placed in the awkward position of having to establish grounds for a divorce notwithstanding the fact that she has already been validly divorced from her husband on a non-culpatory ground, and even though, because of that adjudication, she is not in actuality able to obtain a divorce from the Maryland court. And it is the hypothetical nature of the query here which requires our continuous use of the conditional mood and past perfect tense when referring to the evidentiary burden which Mrs. Wallace shouldered in this case. That she cannot in fact obtain a divorce, however, does not, by itself, defeat her claim for alimony, for while this State's law requires that she show grounds for a divorce, it does not compel her either to actually obtain one in this State or to prove that she *in fact* could have obtained one if she so desired. Our *Altman* decision establishes these latter

propositions beyond question, and we do not read Dr. Wallace to advance a contrary view. He does urge, however, that his former wife would not be entitled to a divorce on the claimed ground of a voluntary separation of the couple since, in his view, no agreement between the parties exists that would support such a determination. Our disagreement with this assertion authorizes the first basis upon which the award of alimony by the chancellor in this case can be founded.

In order to establish the existence of the twelve month voluntary separation ground for divorce *a vinculo* (which the circuit court determined existed here), three elements must be shown: (i) an express or implied agreement to separate, accompanied by a mutual intent not to resume the marriage relationship; (ii) voluntarily living separate and apart without cohabitation for twelve months prior to the filing of the bill of complaint; and (iii) that the separation is beyond any reasonable hope of reconciliation. *See* Code (1957, 1981 Repl. Vol.), Art. 16, § 24; *Smith v. Smith,* 257 Md. 263, 266, 262 A.2d 762, 763-64 (1970). Dr. Wallace apparently grounds his attack alone on a perceived absence of proof with respect to the first element. The evidence supporting the chancellor's determination on this point consists of Mrs. Wallace's statements before the master, which in turn are corroborated by admissions made by the former husband. The testimony emerges from the following colloquy between respondent and her counsel at the hearing:

Q. And, has he since March 30, 1976 ever stayed overnight with you?

A. No, he hasn't.

Q. Have you ever had relations with him since then?

A. No, I haven't.

Q. Now, directing your attention to the period after he had returned the second time. When, if ever, did it come to your mind that there was no longer any expectation on your part that there would be a reconciliation between you and Dr. Wallace?

A. It was about June of '77, a little bit more than a year ago. We had some discussions on the phone and some of them were friendly and it became known — I don't remember the exact words of the discussion but it was clear between both of us that there would be no reconciliation and that we would never go back together.

Q. In your mind was — at that point had the separation between you and Dr. Wallace become final as far as you were concerned?

A. Yes, at that point (unintelligible, talking too low).

Q. And, did you at that time believe there was any reasonable hope or expectation of reconciliation between you?

A. No, I did not believe there was any hope.

Q. And, you had communicated this to him?

A. Yes.

Q. As far as you were concerned then from that point on was the separation agreeable to you?

A. Yes.

Q. Did you make that known in that — was the conversation you just told us about when you made it known to Dr. Wallace the fact that it was agreeable to you?

A. Yes, it was understood.

In addition to this testimony, the pleadings indicate that Dr. Wallace admitted to the following fact: "That after the time of the initial separation of the parties, said separation became mutual and voluntary on the part of each of the parties." While we in no way disparage the principle that acquiescence in or assent to what one cannot prevent does not amount to a voluntary agreement, see Stumpf v. Stumpf, 228 Md. 350, 351, 179 A.2d 893, 894 (1962), we do believe that the chancellor was authorized to conclude that the respondent had met her burden of establishing by a preponderance of the evidence that an understanding between Dr. and Mrs. Wallace, both mutual and voluntary,

came into existence in June of 1977. *See France v. Safe Deposit & Trust Co.,* 176 Md. 306, 4 A.2d 717 (1939); Maryland Rule 421. We reaffirm our prior decisions determining that the fact that a separation begins with the abandonment of one spouse by the other, or with one spouse merely resigned to the reality of the division, does not preclude a subsequent conversion of the disjunction into one that is voluntary. *See Matysek v. Matysek,* 212 Md. 44, 48, 128 A.2d 627, 630 (1957), and citations therein. Seemingly, this would be all the more so where, as here, it is the estranged spouse, rather than the deserter, who seeks the voluntary separation adjudication.

We do point out, however, that the proof does not support the conclusion made by the chancellor that a mutual separation for twelve months prior to the filing of the complaint existed, for the evidence indicates that this durational requirement was not met. It appears that the acquiescence of the respondent was transformed into a mutual agreement of the parties, as the court found, sometime late in June, 1977, and as the amended bill was filed on June 6, 1978 (assuming that this, and not the date the original complaint was filed, is the operative date with which we are here concerned), the requisite twelve month separation prior to the filing of the bill cannot be said to have transpired. Nonetheless, Mrs. Wallace did have grounds for a divorce *a mensa et thoro* based on a voluntary separation under § 25 of Article 16, which imposes no durational requirement like that necessary for the obtention of an absolute divorce on section 24's comparable voluntary separation ground. Thus, inasmuch as a divorce *a mensa* will support an award of alimony, Mrs. Wallace has shown a ground which would have entitled her, absent the Virginia decree, to a divorce, and therefore we reject petitioner's first contention to the contrary.[4]

4. We note in passing that if Mrs. Wallace had not been able to show grounds for a divorce because of durational requirements, she could now by the simple mechanism of the filing of a supplemental bill. *See* Sullivan v. Sullivan, 234 Md. 67, 197 A.2d 910 (1964), and Maryland Rule S72 c.

Nor do we accept the next point asserted by Dr. Wallace — that assuming the existence of a mutual and voluntary agreement, his former wife is nonetheless not entitled to a divorce based on the voluntary separation because the wife's adultery is a recriminatory offense that bars divorce on this ground.[5] The doctor relies on one sentence of section 24 of Article 16, the provision governing *a vinculo* divorces, to buttress this proposition: "A plea of res judicata or of recrimination with respect to any other provisions of this section shall not be a bar to either party obtaining a divorce on this seventh ground" (colloquially referred to as "involuntary separation" without interruption for 3 years or "pure no-fault" divorce).[6] The argument is, since this statutory language establishes that recrimination may not be utilized to bar a divorce on the seventh ground, a recriminatory offense would be available to bar a divorce on any of the other six grounds enumerated in the enactment, one of which is, of course, the voluntary separation for twelve months upon which respondent here relies. Petitioner, in our view, misreads the statute. In the first place, as we indicated earlier, Mrs. Wallace has proven

5. Recrimination is a rule or doctrine which in some circumstances precludes one spouse from obtaining a divorce from the other where the divorce claimant has himself or herself been guilty of conduct which would entitle the other spouse to a divorce. *See* Courson v. Courson, 208 Md. 171, 117 A.2d 850 (1955). The doctrine has the effect of compelling spouses who are in fact separated with no expectation of reunion to remain in law subject to the marital ties, and for this reason, has been criticized as undesirable and injurious to society. *See* H. Clark, Law of Domestic Relations § 12.12, at 373-77 (1968). Because this doctrine is a vestige of the era when divorces were available solely due to fault, it is not surprising that, as we indicate above, the policy reflected in our present divorce statutes dictates that recrimination be not available as a defense to a divorce sought on the so-called "no-fault" grounds. We note that by ch. 575 of the Laws of 1980, the General Assembly has provided that "[i]n granting a limited or absolute divorce, annulment, or alimony, the court may award alimony to either party, and *the existence of a ground for divorce against the party requesting alimony shall not be an automatic bar thereto.*" (codified as Code (1957, 1981 Repl. Vol.), Art. 16, § 1 (a)) (emphasis added). As it is not now before us, we do not address whether by this enactment the legislature intended to abolish the defense of recrimination in Maryland, or intended merely to codify the previous decisions of this Court on the matter. *E.g.,* Flanagan v. Flanagan, 270 Md. 335, 311 A.2d 407 (1973).

6. The seventh ground for an *a vinculo* divorce reads: "on the application of either party when the husband and wife have lived separate and apart without any cohabitation and without interruption for three years."

grounds for a divorce *a mensa* under section 25, and it is unclear whether petitioner could avail himself of this sentence in the section 24 *a vinculo* divorce provision, even with the construction that he would place upon it, to establish recrimination as a defense to an *a mensa* divorce. It is not necessary to pass on this wrinkle, however, for we are content in the conclusion that petitioner's construction of section 24 is wide of the mark. Prior to the enactment of the seventh ground for an *a vinculo* divorce in 1969, and along with it the sentence upon which Mr. Wallace relies, the decisions of this Court were consistent in the determination that legislative policy prevented the use of recrimination to defeat a divorce sought on the voluntary separation ground. *Holofcener v. Holofcener,* 242 Md. 727, 219 A.2d 839 (1966); *Hughes v. Hughes,* 216 Md. 374, 140 A.2d 649 (1958); *Matysek v. Matysek,* 212 Md. 44, 128 A.2d 627 (1957). In broadening the availability of divorce in this State by the addition of this new seventh ground for an absolute divorce, the legislature in 1969 patently intended to provide a means for the termination of the marital union by one spouse not contingent on the conduct, fault, condition or consent of the other partner. As the vehicle implementing this public policy, the seventh ground effectively prevents one spouse from perpetually precluding the obtention of an absolute divorce by the other. The inclusion of the sentence which petitioner now seeks to use to his advantage merely ensures that recrimination cannot be utilized by the one spouse to effectively defeat this policy and foreclose for all time the final dissolution of the marital ties. We can find no indication that the gloss which Dr. Wallace attempts to lay upon the statute, with its resulting wide-ranging impact, was the intendment of the General Assembly. This was our interpretation of the statutory language made in *Flanagan v. Flanagan. supra* at 338, 340, 311 A.2d at 409, 410, which postdated the enactment of the seventh ground, where we indicated that recrimination was not a defense to any of the non-culpatory grounds for divorce. If the General Assembly had intended to radically modify the law (as stated in the just-mentioned decisions interpreting the legislative policy

embodied in the divorce statutes) by requiring that recrimination bar a divorce sought on the ground of voluntary separation, we think that purpose would have been expressed other than through a mere negative inference. We reject petitioner's argument that his former wife's adultery precluded her from obtaining a divorce on the grounds of voluntary separation, secure in the knowledge that if we misread the legislature's intent in this regard, that body will ameliorate our misapprehension with dispatch.

The doctor next contends that even though Mrs. Wallace would have been authorized to obtain a divorce in Maryland, she is nevertheless not entitled to receive alimony by virtue of her adulterous conduct. In urging that this culpable behavior bars her otherwise existing right to alimony, Dr. Wallace relies primarily on our decision twenty-four years ago in *Courson v. Courson,* 213 Md. 183, 129 A.2d 917 (1957), where this Court upheld the chancellor's suspension of alimony payments upon proof of the wife's adultery. There, Mrs. Courson had previously obtained an *a mensa* divorce on the basis of her husband's abandonment, and in that proceeding she was awarded a weekly stipend as permanent alimony. The wife subsequently committed adultery which provoked Mr. Courson, newly armed with knowledge of his spouse's illicit conduct, to seek an absolute divorce. We determined initially that, because the husband's desertion had continued for a duration sufficient to authorize an *a vinculo* divorce, recrimination barred the obtention of an absolute divorce by either spouse. *Courson v. Courson,* 208 Md. 171, 117 A.2d 850 (1955). The husband then sought and received an order from the chancellor suspending the payment of alimony because of the wife's adulterous behavior. This Court, in a 3 to 2 decision, affirmed, holding that:

> the proper rule, supported by reason and authority, is that when a wife, who is living separate and apart from her husband due to his fault and who has obtained no more than a limited divorce from him,

commits adultery, she forfeits her right to her husband's support and the future payments of alimony. [*Id.* at 188, 129 A.2d at 920.]

Before this Court now, Mrs. Wallace points out that the *Courson* holding stands somewhat anomolous in light of our more recent decision in *Flanagan v. Flanagan*, 270 Md. 335, 311 A.2d 407 (1973). In that case, the husband obtained a divorce *a vinculo* on the ground of separation of the parties for five (now three) years, and was ordered by the equity court to pay his former wife alimony in a certain amount. We recognized that the rule precluding an award of permanent alimony to a spouse unable to show grounds for a divorce often effectively bars a wife from obtaining alimony. However, since a "no-fault" divorce decree operates in favor of the one marital partner as much as the other, we noted that the existence of the statutory non-culpable grounds had the effect of changing the predicament in which a spouse might otherwise find herself. *Id.* at 338-40, 311 A.2d at 410. This was not to say, however, that the fault of a party who can show grounds for a "no-fault" divorce does not affect the resulting alimony determination, for we recognized that the award, being governed by principles of equity, may be influenced by the existence of marital misconduct. Thus,

... in those suits in which the actions of the party seeking such a pecuniary award constitute the sole cause for the demise of the marriage, and this wrongdoing consists of acts which are either adultery or abandonment, then, except in rare instances where there exist extremely extenuating circumstances, the award of any alimony would be an abuse of discretion. We have designated adultery and abandonment not on a whim, but because these are the only direct culpatory deeds that the Legislature has selected by name which either authorize or can ripen into grounds for an *a vinculo* divorce thereby indicating that it considers them the more heinous of the acts which can terminate a marriage. But, if there exists separation causing

culpability other than adultery or abandonment on one side, or fault on both sides which caused the separation of the parties, the chancellor should consider the parties' degree of blame as well as their relative guilt in those cases where applicable and, in conjunction with the factors quoted earlier in this opinion, decide upon the proper award. In this thought process, the greater degree of fault on the part of the wife demonstrated, the greater the need which she must show to entitle her to an award of alimony appropriate to the circumstances otherwise existing. [*Id.* at 341-42, 311 A.2d at 411.]

In our view, the just-quoted language of *Flanagan* dictates the outcome of this case. As we have seen, Mrs. Wallace has shown grounds for an *a mensa* divorce under section 25 of Article 16, and is not barred in the first instance from obtaining alimony for failure to prove entitlement to a divorce. Given the existence of these "no-fault" grounds, we next proceed to a consideration of the relative fault of the parties, recognizing that the chancellor, faced in each case with a unique factual predicate, is vested with wide discretion in his decision whether to award alimony and if so, in what amount. *Id.* at 341, 311 A.2d at 411. Here, Dr. Wallace abandoned the marital abode, and abruptly commenced an illicit relationship with another woman which eventually blossomed into a second marriage. The master found as a fact, and the chancellor agreed, that "the lion's share of the fault which destroyed the marriage of the Wallaces' can be laid on the husband," a determination with which on this record we are quite comfortable. It would appear that Mrs. Wallace's post-separation adultery, *see Willoughby v. Willoughby,* 256 Md. 590, 593-94, 261 A.2d 452, 453-54 (1970) (conduct subsequent to actual physical separation may be taken into account in awarding alimony), borrowing the terminology of *Flanagan,* is far from "the sole cause for the demise of the marriage," and indeed, was a rather incidental contributing factor. Here, the most that can be said from the doctor's point of view is that there exists

"fault on both sides which caused the separation of the parties," *id.* at 341-42, 311 A.2d at 411, in light of which, the degree of blame and the parties' relative guilt should be considered in arriving at an award. *Id.* This, in our view, the chancellor properly did, and accordingly, we do not disturb his determination.

Because of the petitioner's reliance on the case, we add a few words concerning the continuing viability of *Courson.* That case and our more recent decision in *Flanagan* dealt with somewhat different situations: in the first, an *a mensa* divorce was sought and obtained on fault grounds while in the latter, non-culpatory grounds existed. *Courson,* in our view, should be seen as a product of its facts involving only fault grounds for divorce and the legal doctrines which relate to divorce and alimony sought on culpatory grounds. For the benefit of those who read *Courson* to completely bar an award of alimony to an adulterous claimant not divorced *a vinculo,* whether fault or "no-fault" grounds for divorce are proven, we think it quite clear that our decision in *Flanagan* charted a different course at least with respect to "no-fault" divorces, and to that extent, *Flanagan* prevails. *See Flood v. Flood,* 24 Md. App. 395, 330 A.2d 715 (1975).

What we have said is sufficient to dispose of the issue presented in this case. Nonetheless, it is advisable that we add some remarks on a related issue which is spotlighted only when the respondent's second argument is examined — that independent of grounds for a divorce under the Maryland statutes, the Virginia divorce decree may be relied on by her to support an award of alimony from a Maryland court. This, in our view, provides the second, and alternate, theory upon which the award of alimony here can be predicated. As a starting point, we mentioned that this issue turns on an interpretation of the requirements under Maryland law for an award of alimony, and does not raise any question involving the accordance of full faith and credit to a foreign divorce decree. *See Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418-19, 77 S. Ct. 1360, 1 L. Ed. 2d 1456 (1957); *Estin v. Estin,* 334 U.S. 541, 548-49, 68 S. Ct. 1213, 92 L. Ed. 1561 (1948). The question is, rather, when our decisions

require, as a prerequisite to an award of alimony, that grounds for a divorce be shown, whether proof that the alimony claimant was entitled to a divorce in a foreign jurisdiction will suffice. Having examined the long line of cases which spell out the requirement of proof of grounds for a divorce, and finding no statement particularly requiring grounds under the Maryland statutes, we apparently are faced with an issue never before addressed in this State.

There exists no reason in our view why Mrs. Wallace cannot rely on the out-of-state divorce decree in the proceeding initiated by her in Maryland to obtain permanent alimony. Commencing from a generality, we observe that an award of alimony, though authorized by statute and stemming from the common-law duty of support, is founded upon notions of equity and considerations of public policy. *See Altman v. Altman,* 282 Md. 483, 492-94, 386 A.2d 766, 771-72 (1978); *Flanagan v. Flanagan, supra* at 341-42, 311 A.2d at 411. The Virginia decree upon which respondent relies, which divorced the parties on that state's non-culpable ground of one year uninterrupted separation without cohabitation, operates to the benefit of Mrs. Wallace as much as in favor of the petitioner, who in actuality obtained the divorce. *See Flanagan v. Flanagan, supra* at 338, 331 A.2d at 409; *Foote v. Foote,* 190 Md. 171, 180-81, 57 A.2d 804, 809 (1948). In this context, we are asked by Dr. Wallace to place his former wife in a position not unlike that faced by spouses in Maryland prior to our *Altman* decision. The effect of requiring a showing of grounds for divorce under the statutes of this State would be, in some cases, to force the claimant spouse, over whose welfare Maryland has a superior interest, to pursue his or her right to alimony in a foreign jurisdiction. *See Altman v. Altman, supra* at 492-93, 386 A.2d at 771-72. This would be so despite the fact that the couple had been divorced at the instigation of the non-claimant spouse by a court of another state on non-culpatory grounds, and notwithstanding that such divorce is valid, recognized and binding in Maryland. In other words, we are asked in effect to apply the policy limitations reflected in this State's statutory grounds for

divorce, in the context of a petition for alimony, to bar a spouse from obtaining an award even though the non-claimant spouse has effectively circumvented those same statutory constraints by the obtention of a foreign divorce. This we will not do, for we refuse to pinion the former wife on a principle of Maryland domestic relations law whose application would seem to presuppose that no valid divorce inuring to her benefit has yet been obtained. Dr. Wallace regained a bachelor status through his own legal endeavors in Virginia, undoubtedly to and for his own advantage. He now attempts, incorrectly from our perspective, to deny his estranged wife the benefit of the divorce decree, and to seek shelter behind the technical legal prerequisites to alimony whose underpinnings in no way support his maneuver. The public policy engendered by the requirement of proof of grounds for divorce to support an award of alimony is not infringed by allowing the respondent here to rely on the foreign divorce and, indeed, notions of equity dictate that we permit Mrs. Wallace to enjoy the full panoply of benefits emanating from the decree. Moreover, we are inclined to believe that modern concepts of comity, which require that we accord respect to certain adjudications of courts of our sister jurisdictions, suggest that we permit the Virginia decree of divorce a status equal for all purposes to that of a comparable one issued by a Maryland court. We, therefore, hold that in a case such as this, where a bona fide resident of another state was awarded a divorce on a "no-fault" ground by a court of that forum lacking personal jurisdiction over the other spouse, the latter spouse may utilize his or her entitlement to the same foreign decree as a basis for an award of alimony by courts in this State.[7] While saying this, we add two points. First, we express no opinion on the related, though somewhat more troublesome, situations presented when a spouse (unable to show grounds for a divorce in Maryland) attempts to buttress a claim for alimony by relying on

---

**7.** We note that by ch. 575 of the Laws of 1980 (effective to cases filed after July 1, 1980), the General Assembly expressed the authority of the Maryland courts to award alimony under certain circumstances after a divorce or annulment has been granted by a court of another jurisdiction.

grounds under a divorce statute in another state when, in fact, either no divorce has been obtained there or the alimony claimant himself or herself pursued and received the foreign divorce. *Cf. Staub v. Staub,* 170 Md. 202, 183 A. 605 (1936) (a pre-*Altman* decision). And second, our holding here does not and should not in any way be read to absolve the claimant of the burden of otherwise proving her entitlement to alimony by a showing of need. *See Timanus v. Timanus,* 178 Md. 640, 642-43, 16 A.2d 918, 920 (1940).

*Judgment of the Court of Special Appeals affirmed.*

*Costs to be paid by the petitioner.*