712 A.2d 606

**Sharon Lee WRIGHT**

v.

**G. Howard PHIPPS.**

**No. 1788, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

July 2, 1998.

James L. Mayer, Columbia, for appellant.

Stuart N. Braiterman, Towson, for appellee.

Submitted before MOYLAN and KENNEY, JJ., and JOHN J. BISHOP, Judge (retired), Specially Assigned.

MOYLAN, Judge.

The appellant, Sharon Lee Wright (Wife), and the appellee, G. Howard Phipps (Husband), were married in Maryland on June 7, 1991. On February 7, 1997, the Husband filed a Supplemental Complaint for Absolute Divorce on grounds of the Wife's adultery. On February 24, 1997, the Wife filed a Supplemental Counter–Complaint for Absolute Divorce on the grounds of the Husband's adultery. On May 16 and May 19, 1997, in the Circuit Court for Baltimore County, Judge John Owen Hennegan held a hearing on the limited issue of the cross-claims of adultery. After hearing evidence and argument from both sides, he concluded that the Wife had committed adultery during the Fall of 1994 and that the Husband had committed adultery during June of 1996. He, therefore, dis-

missed both of their Supplemental Complaints on the grounds of recrimination.

This appeal has been taken by the Wife. She contends

1) that the evidence was not legally sufficient to support the finding of the court that she had committed adultery;

2) that Judge Hennegan erroneously terminated her alimony *pendente lite;* and

3) that Judge Hennegan erroneously dismissed a contempt proceeding brought by her against the Husband without holding a hearing.

### *Proof of the Wife's Adultery*

The Wife does not quarrel with the application by Judge Hennegan of the recrimination principle. That doctrine was well surveyed by Judge Powers for this Court in *Sami v. Sami,* 29 Md.App. 161, 167–75, 347 A.2d 888 (1975). *See also Wallace v. Wallace,* 290 Md. 265, 278–80, 429 A.2d 232 (1981); *Matakieff v. Matakieff,* 246 Md. 23, 35–36, 226 A.2d 887 (1967); *Courson v. Courson,* 208 Md. 171, 174–78, 117 A.2d 850 (1955); *and see* Md.Code, Family Law Article, § 7–103(b)(1991). The Wife's challenge is restricted to the legal sufficiency of the evidence to prove adultery on her part.

A complainant may sustain a charge of adultery by producing evidence of both 1) a disposition on the part of alleged adulterer and the paramour to commit adultery and 2) an opportunity for them to do so. *Laccetti v. Laccetti,* 245 Md. 97, 102, 225 A.2d 266 (1967); *Hockman v. Hockman,* 187 Md. 340, 344, 50 A.2d 136 (1946); *Dougherty v. Dougherty,* 187 Md. 21, 27–8, 48 A.2d 451 (1946). Of practical necessity, the evidence need only be circumstantial by virtue of the fact that because of "the clandestine nature of the offense, it is rarely possible to obtain evidence of the commission of the act by the testimony of eyewitnesses." *Laccetti v. Laccetti,* 245 Md. at 102, 225 A.2d 266.

At the time of their marriage, both the Husband and the Wife were of a mature age. At the hearing on the adultery

issue, the Husband testified that he was then sixty-eight years of age. Although the Wife did not give her age, she had had before her marriage to the Husband no less than nine children by two previous marriages. The adultery proved to have been committed by her in the Fall of 1994 was with her second husband, Larry Harless, to whom she was married for eighteen years and by whom she had had five children. The key witness to the adulterous relationship between the Wife and her ex-husband was their 24–year–old son, Russell Harless.

In terms of legal sufficiency, the testimony of Russell Harless was, in and of itself, sufficient to show both a disposition and an opportunity to commit adultery by the Wife and her ex-husband. Russell Harless lived with his father. He testified that he was at home when his mother visited his father on between ten and fifteen separate occasions during the critical period in question.

With respect to disposition, he testified that on a number of occasions he saw them lying down together on the bed in Larry Harless's bedroom, lying very close to each other. On one of those occasions, Russell Harless walked into the room unexpectedly. His mother jumped up from the bed, adjusting her sweatshirt.

Although not literally necessary in order to make a legally sufficient case with respect to disposition, there was also testimony from an attorney, Bruce Lambdin, who had been a social friend of both the Husband and the Wife during the early years of their marriage. At between approximately 10 P.M. and midnight one evening, Lambdin was present in Bohager's nightclub when he observed the Wife a short distance away. He testified that she and the man she was with "were physically involved." He explained that he meant by that that "they had their arms around each other at various times. She was dancing in front of him. They kissed on a couple of occasions." Within a week or ten days, Mr. Lambdin reported the incident to the Husband in this case. The Husband showed him a picture of the Wife's ex-husband,

Larry Harless. Mr. Lambdin was virtually certain that the man he had seen at Bohager's was in fact Larry Harless.

With respect to opportunity, Russell Harless also testified that there were various occasions when his mother and father were in the bedroom together with the bedroom door locked. Russell Harless testified that on one occasion his mother specifically requested him not to tell the appellee about her trips to her ex-husband's home: "Mom one time I remember told me that if I brought this matter up that she was coming over [to Larry's house] all of the time, it could [affect] her divorce with [the appellee]."

■ Construing all of the evidence as well as all reasonable inferences therefrom in a light most favorable to the Husband, Judge Hennegan's conclusion that the Wife had engaged in adulterous conduct with her ex-husband, predicated on the combination of disposition and opportunity, was not clearly erroneous. *Abare v. Abare*, 221 Md. 445, 450, 157 A.2d 427 (1960); *Steinla v. Steinla*, 178 Md. 367, 373–74, 13 A.2d 534 (1940).

### Alimony Pendente Lite

The appellant's second contention is that she was erroneously denied alimony *pendente lite* during the pendency of this appeal. The appellant's position in this regard, however, is fatally flawed procedurally.

■ As an abstract proposition, we fully agree with the appellant that alimony *pendente lite* is just as appropriate and, indeed, be as required during the pendency of an appeal as during the pendency of the case before the trial court. *Daiger v. Daiger*, 154 Md. 501, 508–09, 140 A. 717 (1928) stated clearly:

In this state it is no longer open to question, first, that a wife in a divorce proceeding is a privileged suitor where she is living apart from her husband and has no independent means of her own, and as such she is entitled to alimony, suit money, and reasonable counsel fees; second, that *she is entitled to the continuance of such alimony during the*

*pendency of an appeal to this court and until its final disposition,* as also the costs incident to the record on appeal, and reasonable counsel fees in the prosecution thereof.

(Emphasis supplied).

In *Sterling v. Sterling,* 145 Md. 631, 643, 125 A. 809 (1924), the Court of Appeals first discussed alimony *pendente lite* generally and then observed that it may be awarded during the pendency of an appeal as surely as it may be awarded during the pendency of a suit before the trial court:

Under the rule and the reason therefor the court may allow the payment of alimony, pending an appeal, and costs and reasonable counsel fees incurred or paid by the wife in the prosecution or defense of an appeal to this Court.

As a result of the ratification of Article 46 of the Declaration of Rights (the so-called Equal Rights Amendment) in 1972, both the entitlement to alimony *pendente lite* and the obligation to pay alimony *pendente lite* are now gender-neutral statuses dependent on the respective financial positions of the two parties. *James v. James,* 96 Md.App. 439, 450–53, 625 A.2d 381 (1993); *Hofmann v. Hofmann,* 50 Md.App. 240, 243–44, 437 A.2d 247 (1981). The subject is now covered by Md.Code, Family Law Article, § 11–102(a), which states:

Except as provided in subsection (b) of this section, in a proceeding for divorce, alimony, or annulment of marriage, *the court may award alimony pendente lite to either party.*

(Emphasis supplied).

Alimony *pendente lite,* however, is not a self-executing entitlement. It must be applied for in timely fashion, to wit, when some litigation (*lite* )involving a divorce or an annulment is actually pending (*pendente* ).

While the cross-complaints for divorce were pending before the Circuit Court for Baltimore County, the Wife timely applied for alimony *pendente lite.* On November 25, 1996, Judge Robert E. Cadigan conducted an evidentiary hearing on

that issue. On December 3, 1996, he awarded the Wife the sum of $2,000 per month as alimony *pendente lite.*

■ The litigation that was then pending and that was the sole *raison d'etre* for the alimony *pendente lite* concluded probably as early as May 19, 1997, when Judge Hennegan dismissed both cross-complaints for divorce on the grounds of recrimination. His decision of May 19 was subsequently memorialized by his signing of a written order to that effect on June 6, 1997. For present purposes, however, it is not necessary to quibble over whether the litigation was terminated on May 19 or June 6. Even accepting the later of the two dates, the Wife's present argument is fatally flawed. As of June 6, if not before, the slate of pending litigation was wiped clean and nothing was then pending before the courts of this State, trial or appellate.

In his order of June 6, Judge Hennegan declared that although a problem with respect to arrearages had to be worked out, "no further payments of alimony *pendente lite* shall accrue after May 19, 1997." That declaration may actually have been redundant. Without anything needing to be said, it would seem that alimony *pendente lite* is automatically terminated with the termination of the pending litigation to which it applies. Whether by virtue of the June 6 order or simply automatically, the alimony *pendente lite* in this case that had been ordered by Judge Cadigan on December 3, 1996, had come to an end. There was no litigation then pending; to wit, there was no **lite** then **pendente.** As a necessary predicate for alimony *pendente lite,* there must be actual litigation then pending, not a mere possibility of future litigation.

If and when, **but only if and when,** the Wife should file an appeal from the trial court's decision, as she did on July 10, 1997, would litigation once again be pending and would alimony *pendente lite* once again become appropriate. If, following the filing of her appeal on July 10, the Wife had applied for alimony *pendente lite* for the duration of the appellate process,

she might well have been granted it,[1] presumably in the same amount as had been awarded pending the trial. The Wife in this case, however, never timely made any such application.

On June 16, the Wife, by way of an appropriate post-trial motion, filed in the circuit court a Motion to Alter or Amend Judgment. That motion was denied by Judge Hennegan on June 20. Then, in a circuitous and awkward approach to the subject of alimony *pendente lite,* she also filed on June 16 what she styled as a Defendant's Motion for Stay of Dismissal of Counter Plaintiff's Supplemental Counterclaim, the Alimony Pendente Lite Order Dated December 3, 1996 and the Earnings Withholding Order Dated February 3, 1997. That motion was also denied by Judge Hennegan on June 20.

The thrust of that motion was that Judge Hennegan was asked to stay the effect of his June 6 order declaring that alimony *pendente lite* had stopped accruing as of May 19. Even if alimony *pendente lite* had not stopped automatically and the June 6 order, therefore, had had some vitality and even if this circuitous procedural approach could somehow be deemed an adequate way of asking for alimony *pendente lite* pending appeal, the motion would still avail the Wife nothing because of its untimely filing. The literal decision of Judge Hennegan which the Wife attacks on this appeal was his decision of June 20, 1997 to deny the stay. That decision was not in error. No award of new alimony *pendente lite* or no prolongation of the original award of alimony *pendente lite*

---

**1.** At that stage of the litigation process, there might well have to be a greater discretion available to the trial judge on the subject of alimony *pendente lite* than at the trial stage. Such discretion would seem advisable to cover the rare case of the clearly frivolous appeal, if it appeared that the appeal had been taken solely for the purpose of generating a prolongation of alimony *pendente lite* for an additional year or so. Enhanced discretion might, indeed, be necessary to handle the question of alimony *pendente lite* during the course of *any* clearly frivolous appeal, even if the prolongation of such support payments were merely an incidental consequence of, rather than the generating motivation for, the frivolous appeal. Such is not, however, the situation before us in this case. It appears, moreover, that such an issue has never heretofore arisen in our case law.

would have been proper on June 20, 1997 for the simple reason that no appeal was then pending.

This seemingly self-evident proposition was settled by the Court of Appeals as early as 1892. In *Rohrback v. Rohrback,* 75 Md. 317, 23 A. 610 (1892), the Court of Appeals held:

[I]t it well settled that alimony may be allowed to the wife *on application by her, after an appeal from an order or decree* dismissing a bill in divorce proceedings.

*The wife could not, in fact, make application for counsel fees and expenses incident to the appeal, until after the appeal had been taken,* because she could not have known in this case, that the husband intended to appeal from the decree of the court below dismissing his bill.

75 Md. at 319, 23 A. 610 (Emphasis supplied). *Accord Daiger v. Daiger,* 154 Md. at 508, 140 A. 717.

After the appeal was filed, Judge Hennegan was never asked to do anything by way of appellate alimony *pendente lite* and was, therefore, in no position where he conceivably could have committed error. The same Motion for Stay of Circuit Court Order that had earlier been presented to him was instead presented to this Court and was denied by Chief Judge Murphy on July 23, 1997. The same Motion for Stay of the Circuit Court Order was then presented to the Court of Appeals and denied by Chief Judge Bell on August 22, 1997. The propriety of those denials by this Court and by the Court of Appeals is not to be doubted. *Dicus v. Dicus,* 131 Md. 87, 90, 101 A. 697, had held as early as 1917:

Application has been made to this Court [Court of Appeals] for an order requiring the appellee to pay the plaintiff a sufficient sum for her costs and counsel fee in the prosecution of the appeal. *This was a question over which the Court below [trial court] had jurisdiction after the appeal was entered. The application should have been made to the trial Court, and if it had been presented there, we have no reason to doubt that it would have been given due consideration.*

*See also Daiger v. Daiger,* 154 Md. at 508, 140 A. 717; *Rohrback v. Rohrback,* 75 Md. at 319, 23 A. 610 ("And although the appeal was taken, the [trial] court still had jurisdiction of the parties, and having jurisdiction, it had the power to determine the question as to the right of the wife to an allowance for counsel fees and costs.")

### Dismissal of Contempt Proceeding

█ The appellant's third contention is essentially a non-starter. At the time of the May 16–19, 1997 hearing on the cross-complaints for absolute divorce on the grounds of adultery, the Husband was in arrears with respect to his payment of alimony *pendente lite*. The Wife had petitioned to have him found in contempt for that non-payment. Counsel for the Wife asked to have the arrearage issue, which was the sole basis for the contempt petition, combined with the hearing on the respective adulteries. Judge Hennegan agreed. The arrearage question was considered and fully and finally disposed of. The Wife's current complaint that Judge Hennegan erroneously failed to conduct a civil contempt proceeding pursuant to Maryland Rules 15–206 and 15–207 simply has no basis in fact.

During the hearing on the merits of the adultery complaints, the following exchange between the court and the appellant's counsel occurred:

> Counsel: *We had combined with today, and I would ask the Court to address* and I don't know if we can do it by stipulation or proffer or whatever, but *a contempt citation was filed with respect to the payment by Mr. Phipps of temporary alimony and he is not up-to-date and that should be preserved.*

> Court: Yes.

> Counsel: So Mr. Phipps owed December through May. He was ordered by Judge Cadigan to pay at a rate of $2,000 per month. So I would think—*I would simply ask the Court to enter relief in this fashion, that you order that the $12,000 total that is due be preserved in your order of*

*dismissal under such that Mr. Phipps would get a credit against the $12,000 if any payments are made.*

*So he would still owe under the order that judgment that Judge Cadigan passed.* Otherwise, he will benefit by his nonpayment.

(Emphasis supplied).

What counsel for the Wife was requesting was for Judge Hennegan not to neglect the arrearage question. Judge Hennegan did not neglect that question. He asked counsel for both parties to agree on the amount of money that was still owed. In an apparently amicable fashion, counsel agreed that the arrearage figure was $2,923.12. In his written order of June 6 dismissing the cross-complaints, Judge Hennegan did everything that the Wife's counsel asked him to do with respect to arrearages. His order contained the following provision:

> It is further determined that pursuant to the Counter–Plaintiff's Petition for Contempt Citation, and upon the Agreement of the parties having been determined that the Plaintiff as of May 19, 1997, owes the Defendant the sum of $2,923.12 in unpaid alimony pendente lite. Said alimony pendente lite shall be paid to the Defendant and Counter–Plaintiff by the Counter–Defendant pursuant to the existing wage lien. Upon payment of the aforesaid $2,923.12, by the Plaintiff and Counter–Defendant (G. Howard Phipps) to the Defendant and Counter–Plaintiff (Sharon Lee Wright), said wage lien shall terminate and no further payment shall be [made] by the Plaintiff unto the Defendant.

He further indicated that the contempt petition would remain pending, by way of some additional leverage, until the arrearage was paid but that upon such payment, the petition would be dismissed:

> Upon payment of the aforesaid sum of $2,923.12, the Defendant's Petition for Contempt shall be dismissed.

The Wife, it fully appears to us, got everything she asked for with respect to the arrearages.  We reject the contention because it does not make any sense.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.*